IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| C.H., by his parents and next Friends, TIMOTHY and BARBARA HAYES,          Plaintiffs, <br><br> v. <br><br> CAPE HENLOPEN SCHOOL DISTRICT, et al., <br><br>          Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. 1:07-cv-00193 MPT |

## DEFENDANTS' OPENING BRIEF IN SUPPORT
## OF THEIR JOINT MOTION FOR SUMMARY JUDGMENT

DEPARTMENT OF JUSTICE
Paula A. Fontello, Esq. (I.D. No. 3732)
102 West Water Street
Dover, DE 19901
Phone: (302) 739-7641; (302) 739-7652
Paula.fontello@state.de.us
Attorneys for the Delaware Department
Of Education, and Secretary of
Education, Valerie A. Woodruff

YOUNG CONAWAY STARGATT
& TAYLOR, LLP
Barry M. Willoughby, Esquire (No. 1016)
Michael P. Stafford, Esquire (No. 4461)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6623; 571-6553
Facsimile:    (302) 576-3299; 576-3461
Email: bwilloughby@ycst.com;
mstafford@ycst.com
Attorneys for Defendants, Cape Henlopen School
District and Dr. George E. Stone.

Dated:  December 28, 2007

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................... iii

NATURE AND STAGE OF THE PROCEEDINGS .................................................. 1

SUMMARY OF THE ARGUMENT .......................................................................... 4

STATEMENT OF FACTS ......................................................................................... 6

      A.  The Prior Litigation Between the Parties. ...................................................... 6

      B.  The September 2005 Agreement and Mutual Release. ................................... 7

      C.  The District Prepares To Develop An IEP Despite C.H.'s Continued
          Enrollment In The Gow School. .................................................................... 8

      D.  The August 22 Eligibility/IEP Team Meeting. ............................................ 10

STANDARD OF REVIEW ...................................................................................... 11

ARGUMENT ........................................................................................................... 13

I.     THE DISTRICT DID NOT COMMIT ANY VIOLATIONS OF THE
      IDEA. ........................................................................................................... 13

      A.  The District Was Not Required To Have A Completed IEP In Place
          For C.H. By The First Day Of The School Year. ...................................... 13

          1.  C.H. was a parentally placed private school student during the
              2005-2006 school year, and Hayes never indicated that he would
              be retuning to the District for the 2006-2007 school year or
              enrolled him in the District. ................................................................. 13

          2.  The District had no legal or contractual obligation to develop an
              IEP for C.H. during the 2005-2006 school year while he was
              attending The Gow School or to "monitor" his progress. ...................... 15

      B.  The District Properly Noticed Both The August 22, 2006 And
          September 11, 2006 IEP Team Meetings. ................................................. 17

II.    THE PROCEDURAL VIOLATIONS ALLEGED BY HAYES, EVEN *IF*
      TRUE, DID NOT COMPROMISE C.H.'S RIGHT TO A FAPE,
      INTERFERE WITH THE PARENTS' OPPORTUNITY TO
      PARTICIPATE IN THE DEVELOPMENT OF AN IEP, OR CAUSE
      ANY DEPRIVATION OF EDUCATIONAL OPPORTUNITY. ...................... 19

A. C.H. Was Not Deprived Of Any Educational Benefits Nor Was His Right To FAPE Impeded. ...........................................................................................21

B. Plaintiffs' Opportunity To Participate In The Decision-making Process Was Not Significantly Impeded. ...............................................................................23

III. EQUITABLE CONSIDERATIONS WEIGH AGAINST GRANTING THE RELIEF SOUGHT BY PETITIONERS. ...................................................24

A. Plaintiff Forfeited Any Right To Tuition Reimbursement Through Her Own Unreasonable Conduct. .................................................................................24

B. The Costs Associated With The Gow School Placement Are Excessive .............................................................................................................29

IV. DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON ANY SECTION 504 AND/OR SECTION 1983 CLAIMS RAISED IN THE COMPLAINT. ...........................................................................29

V. THE ELEVENTH AMENDMENT AND THE DOCTRINE OF SOVEREIGN IMMUNITY BAR ANY NON-IDEA OR SECTION 504 CLAIMS RAISED BY PLAINTIFF IN THE COMPLAINT AGAINST THE DELAWARE DEPARTMENT OF EDUCATION AND SECRETARY WOODRUFF. ..........................................................................................31

CONCLUSION ...........................................................................................................32

065031.1008

# TABLE OF AUTHORITIES

**Cases**

*A.W v. Jersey City Public Schools,*
486 F.3d 791 (3d Cir. 2007) ................................................................................. 31

*Adam J. v. Keller Indep. Sch. Dist.,*
328 F.3d 804 (5th Cir. 2003) ........................................................................... 20, 21

*Amann v. Stow School Sys.,*
982 F.2d 644 (1st Cir. 1992), *cert. denied*, 510 U.S. 1181 (1994) ........................... 13

*B.G. by F.G. v. Cranford Bd. of Educ.,*
702 F. Supp. 1158 (D.N.J. 1988) .......................................................................... 25

*Berger v. Medina City Sch. Dist.,*
348 F.3d 513 (6th Cir. 2003) ................................................................................ 24

*Board of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley,*
458 U.S. 176 (1982) ............................................................................................. 11

*Brandon V. v. Chichester Sch. Dist.,*
Civil Action No. 06-4687, 2007 U.S. Dist. LEXIS 53852 (E.D. Pa. July 25, 2007) .............. 17

*Brown v. Wilson County Sch. Bd.,*
747 F. Supp. 436 (M.D. Tenn. 1990) .................................................................... 12

*Bucks County Dep't of Mental Health/Mental Retardation v. Pennsylvania,*
379 F.3d 61 (3d Cir. 2004) ................................................................................... 24

*Carl D. v. Special Sch. Dist.,*
21 F. Supp. 2d 1042 (E.D. Miss. 1998) ................................................................. 13

*Corey H. v. Cape Henlopen Sch. Dist., et al.,*
286 F. Supp.2d 380 (D. Del. 2003) .................................................................... 7, 31

*DiBuo v. Bd. of Educ.,*
309 F.3d 184 (4th Cir. 2002) ................................................................................ 20

*Doe v. Defendant I,*
898 F.2d 1186 (6th Cir. 1990) .............................................................................. 21

*Edelman v. Jordan,*
415 U.S. 651 (1974) ............................................................................................. 31

*Fisher v. Bd. of Educ. of the Christina Sch. Dist.,*
856 A.2d 552 (Del. 2004) ..................................................................................... 11

iii

*Florance County Sch. Dist. Four v. Carter by & Through Carter*,
510 U.S. 7 (1993)..................................................................................................... 24

*H.W. v. Highland Park Bd. of Educ.*,
108 Fed. Appx. 731 (3d Cir. 2004)........................................................................... 11

*Jones v. Washington County Bd. of Educ*,
15 F. Supp.2d 783 (D. Md. 1998)............................................................................. 12

*K.H. v. North Hunterdon-Voorhees Reg. High Sch. Hunterdon Co.*,
Civ. No. 05-4925 (AET), 2006 U.S. Dist. LEXIS 55522 (D.N.J. Aug. 10, 2006)............. 24, 25

*Knable v. Bexley City Sch. Dist.*,
238 F.3d 755 (6th Cir. 2001) .................................................................................. 20

*Kuszewski v. Chippewa Valley Schools*,
131 F. Supp.2d 926 (E.D. Mich. 2001).................................................................... 13

*Matta v. Board of Educ.*,
732 F. Supp. 253 (S.D. Ohio 1990) .......................................................................... 29

*Nathanson v. Medical College of Pennsylvania*,
926 F.2d 1368 (3d Cir. 1991) .................................................................................. 30

*Pennhurst State School & Hospital v. Halderman*,
465 U.S. 89 (1984).................................................................................................. 31

*Roland M. v. Concord Sch. Comm.*,
910 F.2d 983 (1st Cir. 1990).................................................................................... 24

*Roncker v. Walter*,
700 F.2d 1058 (6th Cir. 1983), *cert. denied*, 464 U.S. 864 (1983)............................ 29

*Ross v. Framingham Sch. Comm.*,
44 F. Supp.2d 104 (D. Mass. 1999), *aff'd*, 229 F.3d 1133 (1st Cir. 2000), *cert. denied*, 531
U.S. 1089 (2001)..................................................................................................... 12

*S.H. v. State-Operated Sch. Dist.*,
336 F.3d 260 (3d Cir. 2003) .................................................................................... 11

*Sacramento City United Sch. Dist. v. Rachel H.*,
14 F.3d 1398 (9th Cir. 1994), *cert. denied*, 512 U.S. 1207 (1994)............................ 29

*Shore Reg'l High Sch. Bd. of Educ. v. P.S.*,
381 F.3d 194 (3d Cir. 2004) .................................................................................... 11

*Simmons v. D.C.*,
355 F. Supp.2d 12 (D.D.C. 2004)............................................................................. 19

iv

*Springer v. Fairfax County Bd. of Educ.,*
   134 F.3d 659 (4th Cir. 1998) ................................................................. 11

*Susan N. v. Wilson Sch. Dist.,*
   70 F.3d 751 (3d Cir. 1995) ................................................................... 11

*T.S. v. Indep. Sch. Dist. No. 54,*
   265 F.3d 1090 (10th Cir. 2001) ............................................................ 20

*Town of Burlington v. Dept. of Educ.,*
   736 F.2d 773 (1st Cir. 1984) ................................................................ 12

*Union Sch. Dist. v. Smith,*
   15 F.3d 1519 (9th Cir.), *cert. denied,* 513 U.S. 965 (1994) ...................... 12

*W.B. v. Matula,*
   67 F.3d 484 (3d Cir. 1995) ................................................................... 30

*W.E.B v. Appoquinimink Sch. Dist.,*
   2003 U.S. Dist. LEXIS 12695 (D. Del. July 8, 2003) ............................. 12

*W.G. v. Bd. of Trustees,*
   960 F.2d 1479 (9th Cir. 1992) .............................................................. 20

*Weiss by Weiss v. School Bd. of Hillsborough County,*
   141 F.3d 990 (11th Cir. 1998) .............................................................. 20

## Other Authorities

20 U.S.C. § 1400 ........................................................................................ 1

20 U.S.C. § 1412(a)(10)(C)(iii) .................................................................. 23

20 U.S.C. § 1415(i)(2)(C)(ii) ...................................................................... 12

20 U.S.C. § 1415(l) ............................................................................. 17, 24

34 C.F.R. § 104.4 ...................................................................................... 29

34 C.F.R. § 300.146 .................................................................................. 16

34 C.F.R. § 300.147(a) .............................................................................. 16

34 C.F.R. § 300.513(a)(2) .......................................................................... 20

42 U.S.C. § 1983 ...................................................................................... 29

CDR 14-925 5.2.4 ..................................................................................... 21

v

                                                

## NATURE AND STAGE OF THE PROCEEDINGS

On September 7, 2006, Plaintiff filed an administrative due process hearing request alleging that the Cape Henlopen School District (hereinafter, "the District") had violated the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq* (hereinafter, "the IDEA"). The District filed a motion requesting that the Delaware Department of Education (hereinafter, "the Department") be joined as an additional party because the relief sought by Plaintiff included a private educational placement at public expense.[1]  The Due Process Hearing Panel (hereinafter, "the Panel") granted the District's request to join the Department.

In her due process hearing request, Plaintiff alleged that the District: (a) failed to develop an IEP while C.H. was enrolled in a private school; (b) failed to provide an IEP for C.H.'s 2006-2007 school year in a timely manner; (c) failed to provide 10 days notice prior to a proposed IEP meeting; (d) failed to provide a speech and language evaluation; and (e) failed to review and consider C.H.'s educational information from The Gow School.  As a proposed resolution, Plaintiff demanded that the District:

> pay for the full cost of tuition and all related costs including but
> not limited to transportation, meals and accommodations for
> [C.H.'s] enrollment in The Gow School in South Wales, NY for
> the 2006/2007 school year, Driver's Education and transportation
> to and from the facility able to provide it within a reasonable
> distance of the Gow School during [C.H.'s] 10th grade year, and
> that the provision of stay put at the Gow School be immediately
> invoked until such time as the CHSD establishes a proven record

---

[1] 14 *Del. C.* § 3124 is a state funding statute which outlines the Department's obligation to contribute funds to the costs of a child's private placement when the child is "complex or rare" and cannot benefit from any suitable public program within the State due to the child's disabilities.  Neither the District nor the Department contend C.H. is "complex or rare."  Rather, the administrative proceedings involved a parental placement dispute.  If, however, the Panel had determined C.H. was "complex or rare" and unable to benefit from any public program, the Department could have an obligation to contribute to private school tuition costs under 14 *Del. C.* 3124 and § 604(c).  Therefore, the Department joined the proceedings to protect its possible exposure and assert its position.

1

> of providing the scientifically researched based educational
> programs implemented by highly qualified staff trained in the
> educational, social, and emotional needs of Dyslexic high school
> students.

Plaintiff's due process request did not allege that the District failed to make a free appropriate

public education ("FAPE") available to C.H. (D.I. 22 , Tab 6).

The issues in the administrative due process were further clarified in a pre-hearing

teleconference held on Thursday, October 5, 2006. As noted in the Panel's letter of October 13,

2006, at the pre-hearing teleconference, "Mrs. Hayes agreed that the issues before this Panel are

procedural in nature with the exception of E above which alleges that the Psycho-educational

evaluation conducted in August 2006 was faulty because the District failed to avail itself of

certain information that the District could have obtained from The Gow School. Ms. Hayes also

acknowledged that the matter before this Hearing Panel did not involve the provision of FAPE

("a free appropriate education") under the IDEA but that she sought as her remedy for the

procedural violations the reimbursement of tuition and other costs for the private placement of

Student in The Gow School, a residential school in the State of New York." (D.I. 21, Tab 5).

A two-day evidentiary hearing was conducted on December 4th and December 12, 2006.

On January 6, 2007, the panel issued its Hearing Decision and Order rejecting all of Plaintiff's

claims. *In the matter of C.H.*, DE DP 07-06 (DE SEA Jan. 6, 2007).[2] Specifically, the Panel

found that "the only *possible* procedural error [committed by the District] was the failure to

include in its notice of the Eligibility/IEP meeting a definitive statement that transition services

would be discussed as a part of development of [C.H.'s] IEP. This *possible* procedural error is

easily curable and does not rise to the level of impeding the child's right to FAPE or significantly

---

[2] The Hearing Decision and Order are located at D.I. 22, Tab 9.

065031.1008

impeding the parent's right to participate in the decision making process regarding the provision of FAPE to [C.H.] or causing a deprivation of educational benefit." (D.I. 22, Tab 9).

Subsequently, on April 5, 2007, Plaintiff filed the Complaint in the instant matter with the United States District Court for the District of Delaware seeking judicial review of the Panel's decision. (D.I. 1). Defendants filed an Answer to the Complaint on June 14, 2007. (D.I. 6). Discovery closed on November 15, 2007. This is the District's and the Department's Opening Brief in Support of Their Joint Motion for Summary Judgment.

065031.1008

## SUMMARY OF THE ARGUMENT

The Defendants are entitled to judgment as a matter of law on all the claims raised in Plaintiff's Complaint.

First, the duties and responsibilities of the District and the Department with respect to C.H.'s attendance at The Gow School during the 2005-2006 school year were limited to those set forth in the Agreement. C.H. attended The Gow School at the election of his parents and was never a publicly placed private school student. Neither the District, nor the Department, had any duty or obligation to monitor his progress at The Gow School during the 2005-2006 school year. Similarly, the Defendants had no duty to develop an IEP for C.H. by the conclusion of the 2005-2006 school year, or to have a finalized IEP in place by the beginning of the 2006-2007 school year.

Second, the District properly noticed both IEP team meetings, including the September 11, 2006 IEP team meeting which Plaintiff refused to attend because she had already filed an administrative due process action seeking C.H.'s placement at The Gow School at public expense. Alternatively, even if the District's notices were inadequate, any violation did not deprive nor impair C.H.'s right to a free appropriate public education, interfere with the Plaintiff's opportunity to participate in the development of an IEP, or cause any deprivation of educational opportunity.

Third, the Plaintiff is seeking an extraordinary remedy in the instant matte, reimbursement for private school tuition (and related expenses) and a continuing, publiclyfunded placement at The Gow School. Equitable consideration weighs against granting such relief to the Plaintiff. Specifically, Plaintiff's unreasonable conduct, namely her refusal to participate in the IEP development process after filing her administrative due process action in September,

4

2006, forfeited any right to any equitable remedy to which Plaintiff might otherwise have been entitled.

Fourth, Plaintiff may argue that the Complaint raises claims under Section 504 of the Rehabilitation Act of 1973 ("Section 504") and 42 U.S.C. § 1983 ("Section 1983"). Defendants are entitled to judgment as a matter of law on any Section 504 claims brought by Plaintiff for the same reasons her claims under the IDEA fail. Finally, the Section 1983 is not an available remedy to redress violations of either the IDEA or Section 504.

Fifth, the Eleventh Amendment and the doctrine of sovereign immunity bar any non-IDEA or Section 504 claims in the Complaint against the Department and Secretary Woodruff.

DB02:6460095.1                                                                                              065031.1008

## STATEMENT OF FACTS

C.H. is 15 years of age (D.O.B.: 11/07/1990) and attends the Gow School, a private residential school located in North Wales, New York which serves only students with disabilities. C.H. is classified as Learning Disabled (LD) and has been diagnosed with a mixed form of dyslexia (phonological, rapid naming and automaticity). (D.I. 1, ¶6). Previous evaluations have also indicated the presence of ADHD and the possibility of a central auditory processing disorder. (D.I. 22, Tab 7, District Exhibit A). C.H.'s parents reside within the District. (D.I. 1, ¶1).

### A.     The Prior Litigation Between the Parties.

C.H. first attended public schools within the District in 4th grade at the beginning of the 2000-2001 school year after moving to the District with his parents. (D.I. 1, ¶7). Since December 2001, C.H. has been enrolled in a succession of private placements at the election of his parents. (D.I. 1, ¶8-14). For most of his 4th grade year (i.e., from December 2001 to approximately June 2002), C.H. attended The Greenwood School in Putney, Vermont. The Greenwood School is a residential private school serving only students with disabilities. At the time, Mrs. Hayes believed the District could not provide C.H. with FAPE, and she requested a due process hearing seeking tuition reimbursement and her son's continued placement at the Greenwood School. The Panel denied Mrs. Hayes' claims and concluded the District provided C.H. with FAPE and an appropriate IEP. Mrs. Hayes then appealed the Panel's decision to the United States District Court for the District of Delaware and, ultimately, to the United States Court of Appeals for the Third Circuit. While both appeals were pending, Mrs. Hayes did not return C.H. to the District, but continued his placement at The Greenwood School for the entire

5th grade year (2002-2003). (D.I., 1, ¶8-9; see also *Corey H. v. Cape Henlopen Sch. Dist., et al.,* 286 F. Supp.2d 380 (D. Del. 2003).

In 2003, the Third Circuit issued a decision affirming the findings of the District Court and finding in the District's favor. Once the Third Circuit's decision was received, C.H. returned to the District in October, 2003, for a brief portion of his 6th grade year (2003-2004 school year). C.H.'s parents withdrew him in February 2004, and unilaterally placed him at The Gow School in New York. The Gow School is a residential school for boys with dyslexia and serves only students with disabilities. (D.I. 1, ¶8-10). For roughly half of the 6th grade year (2003-2004) and the entire 7th grade year (2004-2005), C.H. attended the Gow School. Mrs. Hayes again believed the District could not provide him FAPE and she requested a due process hearing seeking tuition reimbursement and future private placement at The Gow School ("the 2005 due process case"). (D.I. 1, ¶11).

**B.    The September 2005 Agreement and Mutual Release.**

The District, the Department, and Mrs. Hayes settled the 2005 due process case through an Agreement and Mutual Release (hereinafter, the "Agreement") entered into in September, 2005. (D.I. 1, ¶12). The Agreement specifies that it was the decision of C.H.'s parents to enroll him at the Gow School for the regular 2005-2006 school year. (D.I. 22, Tab 7, District Exhibit Q).

Pursuant to the terms and provisions of the Agreement, the District and the Department financed C.H.'s tuition and related expenses at The Gow School during the 2005-2006 school year. (D.I. 21, Tab 2, Joynes, 92-93; D.I. 22, Tab 7, District Exhibit Q). Significantly, however, the Agreement did not provide that the District would develop an IEP for C.H. during his enrollment at The Gow School, nor at any point in the future. In addition, the Agreement did not

7

indicate that C.H. would return to the District at the conclusion of the 2005-2006 regular school year. (D.I. 21, Tab 2, Joynes, 94-95).

The provisions of the Agreement are clear and unambiguous. Paragraph 1 of the Agreement specifically states that "[p]arents have elected to enroll [C.H.] at The Gow School in the State of New York for the regular 2005-2006 school year." With respect to the District's obligation to fund C.H.'s placement at The Gow School, Paragraph 18 explicitly provides that "[t]he parties also agree the obligation of the District to fund [C.H.'s] placement at the Gow School is *expressly limited* to the 2005-2006 school year, and shall not continue after such period." Finally, Paragraph 16 of the Agreement provides that it "constitutes *the entire understanding of the Parties hereto* with respect to its subject matter and both supersede any previous agreements entered into by the parties." (D.I. 22, Tab 7, District Exhibit Q) (emphasis added).

### C.    The District Prepares To Develop An IEP Despite C.H.'s Continued Enrollment In The Gow School.

At the conclusion of the 2005-2006 school year, out of an abundance of caution, the District began planning to develop an IEP in case Hayes ultimately decided to return C.H. to the District. (D.I. 21, Tab 2, Joynes 98-99). Liz Joynes began the IEP development process following a conversation with Hayes on May 25, 2006. (D.I. 21, Tab 2, Joynes, 96, D.I. 22, Tab 6, Parents' Exhibit 6). The District started the process by attempting to secure permission to evaluate C.H. However, when Hayes returned the initial permission to evaluate form, she neglected to select either of the boxes denoting her agreement, or disagreement with the evaluation. (Joynes, 100; Parents' Exhibit 6). Joynes immediately wrote to Hayes regarding this oversight and, by July 6, the District had a properly completed permission to evaluate C.H. and a records release for The Gow School. (D.I. 21, Tab 2, Joynes, 102-103, 105, D.I. 22, Tab 6,

8

Parents' Exhibit 7) ("[a]lthough you did sign the Request for Permission to Evaluate dated May 30, 2006, please note that you neglected to check either of the two required items at the bottom of the form. Therefore, it is unclear whether you are providing your permission for the evaluation, or withholding it").

Mr. Jefferson, a District School Psychologist, conducted a psychological evaluation to determine C.H.'s continued eligibility for special education in the summer of 2006. Jefferson tested C.H. on August 7th and 14th and prepared a Psychological Report discussing the results of the evaluation. (D.I. 21, Tab 1, Jefferson 127; D.I. 22, Tab 7, District Exhibit A).[3]

Prior to the August, 2007 testing, Jefferson requested various documents from The Gow School and provided them with Teacher Rating Scales. (D.I. 21, Tab 1, Jefferson 129). After testing C.H., Jefferson contacted The Gow School on August 16 to ask for a clearer copy of C.H.'s test data. He also inquired about the status of the Teacher Rating Scales, which he had yet to receive. (D.I. 21, Tab 1, Jefferson 127-129). In response to Jefferson's call, Gow faxed him a more legible copy of the test results. Jefferson did not receive the Teacher Rating Scales until August 28, 2006. (D.I. 21, Tab 1, Jefferson 129-130; see also, D.I. 22, Tab 6, Parents' Exhibit 22) (fax of "faculty report forms (2) and the Case Review" from Jeff Sweet at The Gow School to Liz Joynes dated August 25, 2006).

The Psychological Report discussed at the August 22, 2006 eligibility/IEP meeting contained all the information Jefferson had received from The Gow School as of that date. (D.I. 21, Tab 1, Jefferson 133, 139; D.I. 22, Tab 7, District Exhibit A). Moreover, Jefferson incorporated the additional information he received from The Gow School into an Addendum to

---

[3] Jefferson initially contacted Hayes to schedule the evaluation on July 27, 2006. (D.I. 21, Tab 1, Jefferson 151).

his original Psychological Report. (D.I. 21, Tab 1, Jefferson 130; D.I. 22, Tab 7, District Exhibit V).

**D.      The August 22 Eligibility/IEP Team Meeting.**

The District held an eligibility/IEP meeting for C.H. on August 22, 2006.  At the August 22 meeting, the team reviewed Jefferson's evaluation and determined that C.H. remained eligible for special education and related services.  (D.I. 22, Tab 7, District Exhibit B).  At that point, the meeting concluded when the regular education teacher in attendance had to leave.  (D.I. 21, Tab 1, Joynes, 111).  The District attempted to reconvene the August 22 IEP meeting as rapidly as possible.  As John Yore testified, the District "wanted to reconvene immediately" but Hayes had various scheduling conflicts which prevented this.  Therefore, the team agreed to reconvene on September 11, 2006- the first date Hayes was available to do so.  (D.I. 21, Tab 1, Yore 185; D.I. 21, Tab 1, Cook 246-248) (stating that the District wanted to reconvene as quickly as possible but that September 11 was the earliest date on which Hayes was available); (D.I. 21, Tab 3, 6-7) (noting that the District offered several potential dates but that Hayes was unavailable, possibly due to a family camping trip).  However, when the District members of the IEP team met to continue the meeting on September 11th, Hayes did not appear.  She then informed Ms. Kichline she would not attend any further IEP team meetings, and would not permit representatives of The Gow School to attend.

10

## STANDARD OF REVIEW

In considering an appeal from a special education due process hearing panel's decision, the Court is to apply a modified *de novo* standard of review. *S.H. v. State-Operated Sch. Dist.*, 336 F.3d 260, 270 (3d Cir. 2003); *see also, Fisher v. Bd. of Educ. of the Christina Sch. Dist.*, 856 A.2d 552, 557-58 (Del. 2004). Under this standard, "the panel's findings of fact are considered *prima facie* correct. The Panel's decision must be given due weight; and its witness credibility determinations deserve deference unless ... the record read in its entirety would compel a contrary conclusion.'" *Fisher,* 856 A.2d at 557-58; *S.H.*, 336 F.3d at 270. The Court must explain any failure to adhere to the administrative findings, and must give deference to the credibility determinations made by the hearing panel unless the evidence in the record justifies a contrary conclusion. *Shore Reg'l High Sch. Bd. of Educ. v. P.S.*, 381 F.3d 194, 199 (3d Cir. 2004); *H.W. v. Highland Park Bd. of Educ.*, 108 Fed. Appx. 731, 735 (3d Cir. 2004) (witness credibility determinations by hearing officers "who had the opportunity to hear and evaluate [the witnesses] demeanor and persuasiveness" are entitled to special weight). As the Third Circuit has explained, "[i]n this context the word ''justify'' demands essentially the same standard of review given to a trial court's findings of fact by a federal appellate court." *Shore Reg'l.*, 381 F.3d at 199.

Furthermore, in making its determination, the Court must not "substitute '[its] own notions of sound educational policy for those of the school authorities.'" *Fisher,* 856 A.2d at 558 (*citing Board of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206-07 (1982). Indeed, deference to the special educational expertise possessed by administrative hearing panels is well-established in the case law interpreting the IDEA. *See Rowley*, 458 U.S. at 206-07; *Springer v. Fairfax County Bd. of Educ.*, 134 F.3d 659, 667 (4th Cir. 1998); *Susan N. v. Wilson Sch. Dist.*, 70 F.3d 751, 758 (3d Cir. 1995); *Town of Burlington v. Dept. of Educ.*, 736

11

F.2d 773, 792 (1st Cir. 1984); *W.E.B v. Appoquinimink Sch. Dist.*, 2003 U.S. Dist. LEXIS 12695 at *4-5 (D. Del. July 8, 2003).

Although the IDEA provides that district courts will receive the records of the administrative proceedings and "hear additional evidence at the request of a party," 20 U.S.C. § 1415(i)(2)(C)(ii), courts routinely grant summary judgment where, as here, no genuine dispute of material fact exists. *See e.g., Union Sch. Dist. v. Smith*, 15 F.3d 1519, 1523-24 (9th Cir.), *cert. denied,* 513 U.S. 965 (1994); *Jones v. Washington County Bd. of Educ*, 15 F. Supp.2d 783 (D. Md. 1998) (awarding summary judgment for defendant); *Brown v. Wilson County Sch. Bd.*, 747 F. Supp. 436 (M.D. Tenn. 1990). As one court has noted, "a court is authorized to decide the case 'as a matter of law' on motion for summary judgment if enough of the administrative findings and evaluative determinations are so well-founded that any other finding of fact that might be questioned is no longer material to [the] outcome." *Ross v. Framingham Sch. Comm.*, 44 F. Supp.2d 104, 113 (D. Mass. 1999), *aff'd*, 229 F.3d 1133 (1st Cir. 2000), *cert. denied*, 531 U.S. 1089 (2001).

12

**ARGUMENT**

## I.     THE DISTRICT DID NOT COMMIT ANY VIOLATIONS OF THE IDEA.

### A.     The District Was Not Required To Have A Completed IEP In Place For C.H. By The First Day Of The School Year.

#### 1.     C.H. was a parentally placed private school student during the 2005-2006 school year, and Hayes never indicated that he would be retuning to the District for the 2006-2007 school year or enrolled him in the District.

During the 2005-2006 school year, C.H. attended The Gow School at the election of his parents as a parentally placed private school student. The Agreement sets forth the specific, limited obligations of the District and the Department during the 2005-2006 school year.

The IDEA does not require public school districts to develop IEPs for each and every child who has been parentally placed in a private school. *See*, *Amann v. Stow School Sys.*, 982 F.2d 644 (1st Cir. 1992), *cert. denied*, 510 U.S. 1181 (1994) (Parents' unilateral withdrawal of their son from a public school relieved the school of its responsibility to develop and/or revise an IEP on an annual basis); *Kuszewski v. Chippewa Valley Schools*, 131 F. Supp.2d 926 (E.D. Mich. 2001) (rejecting parental argument that district was required to develop, revise, and review new IEPs during the pendency of litigation over a previous IEP); *Carl D. v. Special Sch. Dist.*, 21 F. Supp. 2d 1042 (E.D. Miss. 1998) (A school district is not required to develop and implement, on an annual basis, an IEP for a student with a disability once the child has been unilaterally placed in a private school by their parents).

Here, C.H. attended the Gow School for the 2005-2006 school year, and was re-enrolled at The Gow School on March 2, 2006 for the 2006-2007 school year. (D.I. 21, Tab 2, Kelley 80). C.H. never returned to the District. (D.I. 21, Tab 7, Joynes 120-121). At the conclusion of the 2005-2006 regular school year, Hayes did not ask the District to develop an IEP for C.H. for the

2006-2007 school year. (D.I. 21, Tab 3, Hayes 104-105). Hayes did not inform the District she intended to return C.H. to the District for the 2006-2007 school year, or that she was even considering it. (D.I. 21, Tab 2, Joynes 96-98; D.I. 21, Tab 3, Joynes 5-6). Nor did Hayes enroll C.H. in the District for the 2006-2007 school year. (D.I. 21, Tab 2, Joynes 120-121). Rather, as noted above, Hayes continued his placement at The Gow School. Therefore, C.H. had been, and remained, a student parentally placed at a private school. Thus, the District did not have a legal obligation to develop an IEP for C.H. as of September 7, 2006.

Hayes' claim that the District violated the IDEA by failing to have a completed IEP in place for C.H. by the first day of school is remarkable given that the District attempted to reconvene the August 22, 2006 IEP meeting as rapidly as possible. As John Yore testified, the District "wanted to reconvene immediately" but Hayes had various scheduling conflicts which prevented this. Therefore, the team verbally agreed to reconvene on September 11, 2006- the first date Hayes was available to do so. (D.I. 21, Tab 1, Yore 185; D.I. 21, Tab 1, Cook 246-248) (stating that the District wanted to reconvene as quickly as possible but that September 11 was the earliest date on which Hayes was available); (D.I. 1, Tab 3, Joynes 6-7) (noting that District offered several potential dates but that Hayes was unavailable, possibly due to a family camping trip).

Of course, as noted above, the District had no legal obligation to have an IEP finalized and in place for C.H. as of the first day of school. Therefore, its failure to have an IEP completed by September 7, 2006, under these circumstances, does not constitute a violation of the IDEA.

2.    **The District had no legal or contractual obligation to develop an IEP for C.H. during the 2005-2006 school year while he was attending The Gow School or to "monitor" his progress.**

During the 2005-2006 regular school year, the District and the Department financed C.H.'s tuition and related expenses at The Gow School pursuant to the terms the Agreement. (D.I. 21, Tab 2, Joynes, 92-93; D.I. 22, Tab 7, District Exhibit Q).  Significantly, however, the Agreement did not provide that the District would develop an IEP for C.H. during his enrollment at The Gow School, nor at any point in the future.  In addition, the Agreement did not indicate that C.H. would return to the District at the conclusion of the 2005-2006 regular school year. (D.I. 21, Tab 2, Joynes 94-94).  Finally, the Agreement imposed no obligations to monitor C.H.'s progress at The Gow School on either the District or Department.  Instead, the Agreement provided that C.H. attended The Gow School at his parents' election.  Thus, C.H. was never a publicly placed private school student.

The provisions of the Agreement are clear and unambiguous.  Paragraph 1 of the Agreement specifically states that "[p]arents have elected to enroll C.H. at The Gow School in the State of New York for the regular 2005-2006 school year."  With respect to the District's obligation to fund C.H.'s placement at the Gow School, Paragraph 18 explicitly provides that "[t]he parties also agree the obligation of the District to fund [C.H.'s] placement at The Gow School is *expressly limited* to the 2005-2006 school year, and shall not continue after such period."  Finally, Paragraph 16 of the Agreement provides that it "constitutes *the entire understanding of the Parties hereto* with respect to its subject matter and both supersede any previous agreements entered into by the parties."  (D.I. 22, Tab 7, District Exhibit Q) (emphasis added).

Clearly, the District was under no obligation to develop an IEP for C.H. while he attended The Gow School during the 2005-2006 school year. Similarly, the Agreement did not indicate that C.H. would return to the District following the conclusion of the 2005-2006 school year. Instead, the Agreement merely clarified that his continued attendance at The Gow School would be at Hayes' own expense after the 2005-2006 school year.

Likewise, neither the District nor Department were obligated as "funding agencies" to "monitor" C.H.'s progress at The Gow School and conduct a "review" before the conclusion of the 2005-2006 school year. The Agreement states that C.H. attends The Gow School at his parents' election and provides for a discreet, limited set of obligations for the public agencies during the 2005-2006 school year. In this regard, C.H.'s attendance at The Gow School is distinguishable from that of students publicly placed in private schools. *See* 34 C.F.R. § 300.146 (publicly placed private school children are entitled to special education and related services at no cost to parents and have all of the rights of a child with a disability who is served by a public agency); 34 C.F.R. § 300.147(a) (imposing duty on state educational agency to monitor compliance through procedures such as written reports, onsite visits, and parent questionnaires). Simply put, C.H. attended The Gow School at the choice of his parents, not as a publicly placed private school student. The obligations of the District and the Department with respect to C.H.'s attendance at The Gow School were limited to the terms and provisions of the Agreement. The Agreement's terms impose limited duties on the public agencies and do not entitle C.H. to all of the rights of a child with a disability who attends a public school.

Alternatively, accepting for the sake of argument that the District and Department did have a duty to review C.H.'s progress during the 2005-2006 school year, the public agencies discharged this duty by conducting the August, 2006 evaluation of C.H. The Psychological

Report, (D.I. 22 Tab 7, District Exhibit A), and the Addendum thereto (D.I. 22 Tab 7, District

Exhibit V) discuss C.H.'s standardized testing results, teacher comments, and present levels of

performance at The Gow School. Moreover, the testimony and documentary exhibits admitted

into evidence show that The Gow School had been invited to the August 22, 2006 meeting. (D.I.

21, Tab 2, Sweet 32), and had also been invited to the September 11, 2006 meeting. Indeed, but

for Hayes' own refusal to attend, Gow School representatives would have attended the

September 11, 2006 meeting by conference call.

Finally, Plaintiff has failed to exhaust her administrative remedies with respect to her

allegation that either the District or the Department had a duty to monitor C.H.'s placement at

The Gow School during the 2005-2006 school year and to conduct a review of his progress, and

failed to do so. The IDEA requires plaintiffs to exhaust their administrative remedies prior to

filing lawsuits in court. *See Brandon V. v. Chichester Sch. Dist.*, Civil Action No. 06-4687, 2007

U.S. Dist. LEXIS 53852, *10-11 (E.D. Pa. July 25, 2007); 20 U.S.C. § 1415(l). Here, Plaintiff

has failed to do so with respect to the allegations contained in Paragraph 32 of the Complaint.

**B.     The District Properly Noticed Both The August 22, 2006 And
         September 11, 2006 IEP Team Meetings.**

In the administrative due process action that is the subject of this appeal, Hayes

maintained that the District failed to provide "the required 10 day notice of any proposed IEP

meeting" for the 2006-2007 school year. Although the phrasing of this claim clearly goes to the

timeliness of the written notices, at the hearing, Hayes expanded the claim to include whether

she was notified that a discussion of transition services would take place. The Panel found that

the District properly noticed both eligibility/IEP team meetings that were scheduled for August

22, 2006 and September 11, 2006, respectively.

17

In her Complaint, Hayes alleges that the District violated her procedural rights under the IDEA by failing to provide her with ten days' written notice of the September 11, 2006 IEP meeting. (D.I. 1, ¶36). She further claims that the Panel "erred by finding that the only procedural violation committed by [the District] was a failure to include a definitive statement that transition services would be discussed in its notice for the August 22. 2006 IEP meeting." (D.I. 1, ¶39). Both claims are without merit.

The District provided Hayes with a copy of the Notice of Meeting for the August 22, 2006 eligibility/IEP team meeting by electronic mail on August 18, 2006. (D.I. 22, Tab 6, Parents' Exhibit 10). That notice identified the District participants in the meeting, invited C.H. to attend, and stated the purpose of the meeting. Specifically, the meeting was to review the results of recent screenings, evaluations, or assessments, to determine eligibility for special education services, and to develop, review, or revise an Individual Education Program (IEP), "*including all related components*." (D.I. 22, Tab 6, Parents' Exhibit 10). Transition services are included on the Notice because they are related components of the IEP. (D.I. 22, Tab 2, Joynes 109). It is important to note that the Panel did not find that the District committed a procedural violation of the IDEA by not specifically mentioning transition services in the notice of meeting. Instead, the Panel merely observed, without deciding, that this failure constituted the only "*possible*" procedural violation committed by the District.

Furthermore, at the August 22 meeting, Hayes signed a Waiver indicating that she had "voluntarily waived [her] right to a written notice provided ten (10) working days prior to a meeting involving the identification, evaluation, placement, or the provision of a free appropriate public education (FAPE) of my child." (D.I. 22, Tab 7, District Exhibit B). In addition, the unanimous testimony of the District witnesses, outlined at greater length *supra* and *infra*,

indicates that the IEP meeting was verbally scheduled to continue on September 11, 2006 at the conclusion of the August 22 meeting.

While Hayes admits that the discussion concerning the September 11 meeting date occurred, in her memory, she did not want to be "sworn to it" because September 11th was her younger son's birthday. (D.I. 21, Tab 3, Hayes 90-91). Furthermore, by her own admission, Hayes refused to attend the September 11th meeting because she had filed for due process, not because she had received inadequate or untimely notice of it. (D.I. 21, Tab 3, Hayes, 93).

Hayes was provided with a written notice for the August 22, 2006 eligibility/IEP team meeting. She attended, and she signed a Waiver of her rights to ten working days notice. Although the specific phrase "transition services" is not listed on the Notice, it is encompassed within the ambit of the phrase "all related components" under IEP development. In addition, while the team intended to discuss transition services on August 22, the meeting concluded prior to this discussion taking place. Therefore, the failure to specifically state that transition services would be discussed at the meeting did not prejudice Hayes in any way because the discussion never actually occurred. Finally, the September 11, 2006 IEP meeting was merely a continuation of the August 22, 2006 meeting -- it was scheduled verbally at the conclusion of the August 22, 2006 meeting, and it did not require its own written notice.

## II.    THE PROCEDURAL VIOLATIONS ALLEGED BY HAYES, EVEN *IF* TRUE, DID NOT COMPROMISE C.H.'S RIGHT TO A FAPE, INTERFERE WITH THE PARENTS' OPPORTUNITY TO PARTICIPATE IN THE DEVELOPMENT OF AN IEP, OR CAUSE ANY DEPRIVATION OF EDUCATIONAL OPPORTUNITY.

It is well-established that "'claims of procedural violations of IDEA do not, in themselves, inexorably lead a court to find a child was denied FAPE.'" *Simmons v. D.C.*, 355 F. Supp.2d 12, 18 (D.D.C. 2004) (*quoting Schoenbach*, 309 F. Supp.2d at 78)); *Adam J. v. Keller Indep. Sch.*

19

*Dist.*, 328 F.3d 804, 811-12 (5th Cir. 2003); *see also Weiss by Weiss v. School Bd. of Hillsborough County*, 141 F.3d 990, 996 (11th Cir. 1998). Courts that have addressed this question have uniformly and consistently held that "procedural defects alone do not constitute a violation of the right to a FAPE unless they result in the loss of an educational opportunity." *Adam J. v. Keller Indep. Sch. Dist.*, 328 F.3d 804, 811-812 (5th Cir. 2003); *T.S. v. Indep. Sch. Dist. No. 54,* 265 F.3d 1090, 1095 (10th Cir. 2001); *DiBuo v. Bd. of Educ.*, 309 F.3d 184, 190 (4th Cir. 2002) (explaining that "under our circuit precedent, a violation of a procedural requirement of the IDEA (or one of its implementing regulations) must actually interfere with the provision of a FAPE"); *Knable v. Bexley City Sch. Dist.*, 238 F.3d 755, 765 (6th Cir. 2001) ("[A] procedural violation of the IDEA is not a per se denial of a FAPE; rather, a school district's failure to comply with the procedural requirements of the Act will constitute a denial of a FAPE only if such violation causes substantive harm to the child or his parents."); *W.G. v. Bd. of Trustees*, 960 F.2d 1479, 1484 (9th Cir. 1992) ("Procedural flaws do not automatically require a finding of a denial of a FAPE" unless the procedural inadequacies result in a loss of educational opportunity "or seriously infringe the parents' opportunity to participate in the IEP formulation process . . ."). The regulations adopted by the U.S. Department of Education further clarify this point by listing the three specific circumstances in which procedural violations can lead to a finding that a child did not receive FAPE. Specifically, "in matters alleging a procedural violation, a hearing officer may find that a child did not receive a FAPE *only if* the procedural inadequacies (i) Impeded the child's right to a FAPE; (ii) Significantly impeded the parent's opportunity to participate in the decision-making process regarding the provision of a FAPE to the parent's child; or (iii) Caused a deprivation of educational benefit." 34 C.F.R. § 300.513(a)(2) (emphasis added).

Obviously, Defendants believe that no procedural violations occurred in the instant
matter. However, in the alternative, assuming for the sake of argument that one, or more,
procedural violations *did* occur, Plaintiff is not entitled to the relief she has requested because
none of the alleged procedural violations resulted in a loss of educational opportunity for C.H. or
seriously infringed his parents' ability and/or opportunity to participate in the IEP process. *Cf.*
*Adam J. v. Keller Indep. Sch. Dist.*, 328 F.3d 804, 811-12 (5th Cir. 2003); *Doe v. Defendant I*,
898 F.2d 1186, 1191 (6th Cir. 1990) ("Adequate parental involvement and participation in
formulating an IEP" not strict adherence to a "laundry list of items" is the "primary concern" of
the IDEA).

A.    **C.H. Was Not Deprived Of Any Educational Benefits Nor Was
His Right To FAPE Impeded.**

Had C.H. appeared at Cape Henlopen High School on September 5, 2006[4] for the first
day of school, he would have suffered no impediment to his right to receive FAPE nor been
deprived of any educational benefit by the fact that his IEP was still being developed.

Here, C.H. would have been transferring into the District from The Gow School.
Regulations adopted by the Department provide districts with up to sixty (60) calendar days to
develop an IEP for a student transferring from an out-of-state public school. *See* former CDR
14-925 5.2.4 ("A review of the IEP shall be instituted and completed within thirty (30) calendar
days from the date of initial attendance of the child in the receiving agency, and sixty (60)
calendar days for students transferring from out-of-state schools").[5] Of course, C.H. would not
have arrived with an IEP from Gow.[6] Indeed, the District never received any indication that he

---

[4] (D.I. 21, Tab 2, Kichline 48-49; D.I. 21, Tab 2, Joynes 117).
[5] *Cf.* current CDR 14-025 23.5; *see also* current CDR 14-925 23.5.
[6] OSEP has addressed the issue of intrastate transfer students who arrive from in-state public
schools without current IEPs or for whom IEPs cannot be obtained. According to OSEP, "[i]f the

had an IEP there. (D.I. 21, Tab 1, Jefferson 175). However, C.H.'s lack of a Gow School IEP would not have presented a problem. As Liz Joynes testified, and as the above quoted regulation indicates, public school districts in Delaware are not required to have completed IEPs in place for in-state or out-of-state transfer students on their first day of classes in the District. Instead, during the 30 or 60 day interim period, the District implements a program based on that which the student received at their prior district while finalizing the IEP. (D.I. 21, Tab 2, Joynes 118-119). In addition, the first two days of school are primarily orientation days. (D.I. 21, Tab 1, Jefferson 175-176). In Dave Jefferson's opinion, it would not have been "detrimental" to C.H. if he did not have an IEP finalized and in place as of the first day of school. (D.I. 21, Tab 1, Jefferson 176).

Moreover, the District moved expeditiously to schedule and conduct the Speech Language Evaluation, (D.I. 21, Tab 1, Kichline 61; D.I. 22, Tab 7, District Exhibit E), and reconvene the IEP meeting. Indeed, as noted *supra*, it was Plaintiff's own scheduling conflicts that prevented the August 22, 2006 meeting from being reconvened until September 11, 2006. In addition, C.H. never, in fact, re-enrolled in the District, and did not attend a single day of school there this year, Instead, he has at all times remained enrolled in The Gow School.

---

child's current IEP is not available, or if either the new school district or the parent believes that it is not appropriate, an IEP meeting would have to be conducted. This meeting should take place within a short time *after the child enrolls* in the new school district (normally within *one week*)." *Letter to Anonymous*, 25 IDELR 525 (OSEP Oct. 29, 1996). Thus, according to OSEP, district's receiving in-state transfer students who have been found to be eligible for special education and related services, but whose IEPs are, for some reason, not provided or available to the new receiving district, have up to one week *after* enrollment to conduct an IEP *meeting*.

**B.    Plaintiffs' Opportunity To Participate In The Decision-making Process Was Not Significantly Impeded.**

In addition, none of the alleged procedural violations, including the District's failure to send a written notice for the September 11, 2006 IEP team meeting, significantly impeded Plaintiffs' opportunity to participate in the IEP development process.

First, the September 11, 2006 IEP meeting was merely a continuation of the August 22, 2006 meeting. (D.I. 21, Tab 1, Kichline 120; D.I. 21, Tab 1, Yore 181). The witness testimony shows that the District wished to continue the August 22 meeting as soon as possible, and that it was Plaintiff's own schedule which prevented this from occuring. (D.I. 21, Tab 1, Yore 181-182, 185; D.I. 21, Tab 1, Cook 246-248, D.I. 21, Tab 3, Joynes 6-7). Therefore, the team agreed upon September 11, 2006 as the meeting date. (D.I. 21, Tab 1, Yore 185). Hayes *admits* that these discussions took place and that the meeting was to take place on September 11th. (D.I. 21, Tab 3, Hayes 90-91) (Hayes claims, however, that she did want to be "sworn to" the September 11th date). To find that the absence of a written notice for the September 11 IEP team meeting "significantly impeded" Hayes' ability to participate in the IEP development process, under these circumstances, would be to exalt form over substance to an unacceptable degree.

The unanimous testimony of the witnesses indicates that it was Hayes' own personal decision to cease participating in the IEP development process after filing her Due Process Complaint on September 7, 2006. (D.I. 21, Tab 1, Kichline 66-68; D.I. 21, Tab 3, Hayes 93). She did not attend the September 11, 2006 IEP meeting, and she refused to participate in any additional meetings thereafter. When asked why she failed to attend the September 11th meeting, Hayes replied that it was "because I had filed for due process." (D.I. 21, Tab 3, Hayes 93). Thus, it cannot be said that any procedural violations by the District *significantly impeded* Hayes' ability to participate in the IEP development process.

23

## III.   EQUITABLE CONSIDERATIONS WEIGH AGAINST GRANTING THE RELIEF SOUGHT BY PETITIONERS.

Reimbursement for private school tuition following unilateral placement by a parent is a

matter of equitable relief. *Roland M. v. Concord Sch. Comm.,* 910 F.2d 983 (1st Cir. 1990);

*Bucks County Dep't of Mental Health/Mental Retardation v. Pennsylvania,* 379 F.3d 61, 75 (3d

Cir. 2004); *Berger v. Medina City Sch. Dist.,* 348 F.3d 513, 523 (6th Cir. 2003). Under the

IDEA, an award of private school tuition may be reduced or denied based on a "finding or

unreasonableness with respect to actions taken by the parents." 20 U.S.C. §1412(a)(10)(C)(iii);

*see also, K.H. v. North Hunterdon-Voorhees Reg. High Sch. Hunterdon Co.,* Civ. No. 05-4925

(AET), 2006 U.S. Dist. LEXIS 55522, *5 (D.N.J. Aug. 10, 2006) ("[a] court may reduce or deny

reimbursement costs based on the parents' unreasonable behavior during the IEP process."). The

cost of the private placement is also a proper consideration when fashioning equitable relief

under the IDEA. As one court has noted, "[c]ourts fashioning discretionary equitable relief

under IDEA *must consider all relevant factors*, including the appropriate and reasonable level of

reimbursement that should be required. Total reimbursement will not be appropriate if the court

determines that the cost of the private education was unreasonable." *Florance County Sch. Dist.

Four v. Carter by & Through Carter*, 510 U.S. 7, 15-16 (1993); *Bucks County Dep't of Mental

Health/Mental Retardation v. Pennsylvania*, 379 F.3d 61, 69 (3d Cir. 2004).

### A.   Plaintiff Forfeited Any Right To Tuition Reimbursement Through Her Own Unreasonable Conduct.

As noted *supra*, parents may forfeit an award of private school tuition reimbursement if a

court determines that they acted unreasonably. 20 U.S.C. §1412(a)(10)(C)(iii). Here, Hayes has

forfeited any right to private school tuition reimbursement to which she might otherwise be

entitled based on her actions, and inactions, subsequent to the filing of her due process request.

24

*Cf. North Hunterdon-Voorhees,* 2006 U.S. Dist. LEXIS 55522 at *14 (holding that "the parents forfeited their right to any equitable remedy to which they might have been entitled because they failed to meaningfully engage in the IEP process"); *B.G. by F.G. v. Cranford Bd. of Educ.,* 702 F. Supp. 1158, 1166 (D.N.J. 1988) ("Conduct that disregards the participatory process cannot be ignored or condoned.").

The evidence shows that Plaintiff had no intention of returning C.H. to the District for the 2006-2007 school year. Instead, she was determined to maintain his placement at The Gow School at public expense. For example, Liz Joynes testified that, as early as May 25, 2006, Hayes informed her that she wanted C.H. to remain at The Gow School and did not intend to return him to the District. (D.I. 21, Tab 2, Joynes 96-97). Hayes' own actions are in accord with her stated desire. For example, Hayes had already completed and returned a re-enrollment contract on March 2, 2006, for C.H. so that he could continue to attend the Gow School during the 2006-2007 school year. (D.I. 21, Tab 2, Kelley 80). The early completion of the re-enrollment contracts does not appear to have been necessary for C.H. to have continued attending The Gow School given that it has a rolling admissions process and regularly accepts students during the school year. (D.I. 21, Tab 2, Kelley 69). In addition, Hayes paid a $10,000.00 tuition deposit to The Gow School on August 18, 2006, just days prior to the August 22, 2006 IEP meeting. She paid another $10,000.00 on September 4, 2006. (D.I. 21, Tab 2, Kelley, 80). On the other hand, Hayes, by her own admission, never took any steps to enroll C.H. in the District. (D.I. 21, Tab 2, Kelley 69). Moreover, Hayes could not identify a *single* document in the record indicating that she intended to return C.H. to the District. (D.I. 21, Tab 3, Hayes 105). These actions, and inactions, show that Hayes acted in conformity with her stated intent to return C.H. to The Gow School for the 2006-2007 school year.

25

Despite her request for an entire year's worth of tuition reimbursement and related expenses, Hayes ceased cooperating with the District in terms of conducting the Speech/Language evaluation and refused to participate any further in the IEP development process following filing for Due Process on September 7, 2006.

For example, the record indicates that Kichline wrote to Mr. Rodgers at The Gow School and invited The Gow School to attend the September 11, 2006 IEP team meeting. (D.I. 21, Tab 1, Kichline 58-59; D.I. 22, Tab 6, Parents' Exhibit 11). The District was ready to convene the IEP team meeting on September 11, 2006, but Hayes did not appear. Instead, the District received a telephone call from The Gow School shortly before the scheduled start time indicating that Hayes would not attend and that, therefore, The Gow School would not be participating by conference call. (D.I. 21, Tab 1, Kichline 59-60). Of course, Hayes did not attend "because she had filed for due process" on September 7th. (D.I. 21, Tab 3, Hayes 93).

After Hayes did not attend the September 11, 2006 IEP team meeting, Kichline wrote to her proposing several potential IEP team meeting dates. (D.I. 21, Tab 1, Kichline, 56-57, 60; D.I. 22, Tab 7, District Exhibit C). In her letter of September 11, 2006, Kichline stated:

> Please find enclosed a notice of meeting for an Individualized Education Plan meeting for [C.H.] for 26 September 2006, with an alternative date of 28 September 2006. However, if you are willing to waive your right to a 10-day written notice of meeting to expedite the process, the team could meet on 22 September 2006 at 9:00 at Cape Henlopen High School. Please contact me as to your preference.

(D.I. 22, Tab 7, District Exhibit C).

When Hayes failed to respond to her letter of September 11, 2006, Kichline contacted her by telephone in an attempt to schedule an IEP meeting. In response, Hayes stated that she would not attend any future IEP meetings and that, in addition, she would not permit the Speech/Language evaluation to be performed at The Gow School. Kichline wrote Hayes on

26

September 27, 2006 documenting this conversation. (D.I. 21, Tab 2, Kichline 66-68; D.I. 22,

Tab 7, District Exhibit D). In her letter, Kichline noted that:

> [L]ast week, you advised me you would not participate in or attend
> any IEP meeting for [C.H.] in the District. You also advised you
> would not authorize any educators from the Gow School to
> participate in C.H. IEP team meeting at the District and that you
> would not permit the District to conduct a Speech and Language
> Evaluation of [C.H.] Please understand your refusal to cooperate
> prevents the District from developing the IEP you requested for
> [C.H.].

(D.I. 22, Tab 7, District Exhibit D).

As noted above, in addition to refusing to participate in any additional IEP meetings,

Hayes also declined permission for the District to conduct the Speech/Language evaluation. As

Kichline indicated in her testimony, she wrote Hayes on September 15, 2006 requesting

permission for the Speech/Language evaluation to be conducted at The Gow School. (D.I. 21,

Tab 1, Kichline 61; D.I. 22, Tab 7, District Exhibit E). In her letter of September 15, Kichline

informed Hayes that:

> One of our Speech and language Pathologists is available to travel
> to Buffalo, New York, to conduct the evaluation next week. We
> have also been in contact with Mr. Kelley, the Principal of the
> Gow School, to arrange scheduling. Mr. Kelley indicated that the
> evaluation could be done on either Tuesday, September 19th or
> Wednesday, September 20th. However, Mr. Kelley also stated that
> he was uncomfortable allowing the evaluation to occur based on a
> conversation which he had with you. Mr. Kelley said that you had
> informed him that you did not want any District personnel to see
> [C.H.] at the Gow School. Based on his conversation with you,
> Mr. Kelley informed us that he was not in a position to approve our
> visit and evaluation…

(D.I. 22, Tab 7, District Exhibit E).

Kelley's testimony on this point is particularly telling. Kelley stated that Kichline

contacted him to arrange scheduling of the Speech/Language evaluation. (D.I. 21, Tab 2, Kelley

50). He told Kichline that The Gow School's normal practice upon receiving such requests was

to contact the parents prior to approving the assessment. (D.I. 21, Tab 2, Kelley 51-52). Hayes, however, refused to give permission for the Speech/Language evaluation to be conducted. (D.I. 21, Tab 2, Kelley 53).

The instant matter is analogous to that faced by the court in *North Hunterdon-Voorhees* and leads inexorably to the same conclusion -- that the parents' unreasonableness has forfeited any right to tuition reimbursement. In *North Hunterdon-Voorhees*, the court found that:

> the record shows that the parents were unwilling to give Defendant
> a realistic opportunity to provide B.Y. with a FAPE as they had
> already made up their minds to send B.Y. to a private placement.
> For example, the *parents had already enrolled their child at the
> Kildonan School before the final IEP meeting was held.* Also, the
> parents failed to provide timely information about the services
> offered by the Craig School to assist with the development of
> B.Y.'s IEP. *The parents stopped participating in the IEP process
> even though B.Y.'s IEP was still being developed.* Further, the
> parents did not file their due process petition until after B.Y. had
> started attending the Kildonan School. *These actions show that the
> parents were determined to place their child in private school and
> did not wish to make the necessary effort to complete the IEP
> process.* As a result, the Court will uphold the ALJ's determination
> that the parents forfeited their right to reimbursement...

2006 U.S. Dist. LEXIS 55522 at *15-16 (emphasis added).

Here, Hayes' actions and inactions demonstrate that she had already made up her mind in favor of continued private placement at The Gow School. Furthermore, like the parent in *North Hunterdon-Voorhees,* Hayes ceased participating in the IEP process after filing her Due Process request. Hayes' actions show that she was determined to continue C.H.'s enrollment at The Gow School and that she did not wish to make the necessary effort to complete the IEP process with the District. Her behavior is unreasonable, and she forfeits any right to tuition reimbursement to which she might otherwise have been entitled.

**B.    The Costs Associated With The Gow School Placement Are Excessive.**

Alternatively, even if the Court determines that Hayes' own conduct subsequent to the filing of her Due Process Complaint on September 7, 2006 does not preclude an award of tuition reimbursement, her requested relief should still be denied because the costs of The Gow School tuition and related expenses are excessive and onerous.

As many courts have noted, cost is a relevant factor when granting discretionary equitable relief. *See e.g. Roncker v. Walter*, 700 F.2d 1058, 1063 (6th Cir. 1983), *cert. denied*, 464 U.S. 864 (1983) ("Cost is a proper factor to consider since excessive spending on one handicapped child deprives other handicapped children."); *Sacramento City United Sch. Dist. v. Rachel H.*, 14 F.3d 1398, 1404 (9th Cir. 1994), *cert. denied*, 512 U.S. 1207 (1994) (considering cost in applying mainstreaming requirement); *Matta v. Board of Educ.*, 732 F. Supp. 253, 255 (S.D. Ohio 1990) ("When devising an appropriate program for individual students, costs concerns are legitimate.").

Here, the cost of C.H.'s education at the Gow School, $42,600.00 per year, is unreasonable. (D.I. 21, Tab 2, Sweet 43). Moreover, Hayes is not seeking merely the costs of tuition as relief in this case. Instead, she also seeks other costs associated with C.H.'s enrollment there. Thus, the actual costs to the District of an award in Hayes' favor would exceed Gow's annual tuition costs.

**IV.    DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON ANY SECTION 504 AND/OR SECTION 1983 CLAIMS RAISED IN THE COMPLAINT.**

In her Complaint, Plaintiff mentions two additional federal statutes, Section 504 of the Rehabilitation Act of 1973 ("Section 504") and 42 U.S.C. § 1983 ("Section 1983") as representing part of the Court's jurisdictional basis for the instant matter. (D.I. 1). Section 504

29

and Section 1983 are not mentioned elsewhere in the Complaint, except in paragraph c in which

Plaintiff requests that the Court, "[e]nter a finding that the Defendants violated section 504 of the

Rehabilitation Act of 1973."

To establish a violation of Section 504, Plaintiff must demonstrate that (1) C.H. is

disabled as defined under Section 504; (2) that C.H. is "otherwise qualified" to participate in

school activities; (3) the District receives federal financial assistance; and (4) C.H. was excluded

from participation in, denied the benefits of, or subject to discrimination at, the District.

*Nathanson v. Medical College of Pennsylvania*, 926 F.2d 1368, 1380 (3d Cir. 1991); 34 C.F.R. §

104.4. Here, the Court should dismiss Plaintiff's Section 504 claims, because Plaintiff has failed

to properly plead any of the elements of the *Nathanson* test. Specifically, the Complaint does not

indicate that C.H. is otherwise qualified to participate in school activities, does not allege that

any of the Defendants receive federal financial assistance, and does not allege that C.H. was

excluded from participation in, denied the benefits of, or subjected to discrimination at, the

District. As such, the Complaint does not properly state a claim under Section 504.

Alternatively, should the Court determine that the Complaint contains a Section 504

claim, and chose not to dismiss it, the Defendants are entitled to judgment as a matter of law for

the same reasons outlined *infa* that apply to Plaintiff's IDEA claims. *See e.g.*, *W.B. v. Matula,* 67

F.3d 484, 492-93 (3d Cir. 1995) (comparing FAPE requirement in IDEA and Section 504's

"appropriate education" requirement and finding that "there appears to be few differences, if any,

between IDEA's affirmative duty and Section 504's negative prohibition.").

Defendants are also entitled to judgment as a matter of law on any claims potentially

raised in the Compliant pursuant to Section 1983. The Third Circuit has recently held Section

1983 is not available to provide a remedy for alleged violations of either Section 504 and/or the

IDEA. *A.W v. Jersey City Public Schools*, 486 F.3d 791 (3d Cir. 2007). As such, Defendants are entitled to judgment as a matter of law on any Section 1983 claims raised by Plaintiff.

V.    **THE ELEVENTH AMENDMENT AND THE DOCTRINE OF SOVEREIGN IMMUNITY BAR ANY NON-IDEA OR SECTION 504 CLAIMS RAISED BY PLAINTIFF IN THE COMPLAINT AGAINST THE DELAWARE DEPARTMENT OF EDUCATION AND SECRETARY WOODRUFF.**

The Eleventh Amendment provides that "the Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend XI. The Eleventh Amendment "is a constitutional limitation on the federal judicial power established in Art. III" of the U.S. Constitution. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 98 (1984). While the Amendment does not facially bar suits against the State by its citizens, the United States Supreme Court has held that in the absence of consent, a state is "immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). A State may consent to suit in federal court, but the State's consent must "be unequivocally expressed." *Pennhurst*, 465 U.S. at 99. Admittedly, the Delaware Department of Education has waived its "sovereign immunity for claims brought under the IDEA and the Rehabilitation Act" through its receipt of federal funds. *Corey H. v. Cape Henlopen School District*, 286 F.Supp.2d 380, 384 (D. Del. 2003). However, to the extent that Plaintiff is alleging any non-IDEA claim or Section 504 claim pursuant to 42 U.S.C. § 1983, the Eleventh Amendment bars such a claim.

## CONCLUSION

For the foregoing reasons and authorities cited herein, summary judgment must be

granted to the Defendants on all the claims raised in Plaintiff's Complaint.

YOUNG, CONAWAY, STARGATT                    DEPARTMENT OF JUSTICE
& TAYLOR  LLP

*/s/ Michael P. Stafford*                             */s/ Paula A. Fontello*
Barry M. Willoughby, Esquire (I.D. No. 1016)   Paula A. Fontello, Esquire (I.D. No. 3732)
Michael P. Stafford, Esquire  (I.D. 4461)      102 West Water Street
1000 West Street                               Dover, DE  19901
17th Floor                          Phone: (302) 739-7641; (302) 739-7652
Wilmington, DE 19899                           paula.fontello@state.de.us
Phone: (302) 571-6553; (302) 576-3470          Attorneys for the Delaware Department of
bwilloughby@ycst.com; mstafford@ycst.com       Education, and Secretary of Education,
Attorneys for the Cape Henlopen School         Valerie A. Woodruff
District  and Dr. George E. Stone


Dated:  December 28, 2007

DB02:6460095.1                                                      065031.1008

LEXSEE

BRANDON V., ET AL., Plaintiffs v. THE CHICHESTER SCHOOL DISTRICT, ET
AL., Defendants

CIVIL ACTION NO. 06-4687

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
PENNSYLVANIA

2007 U.S. Dist. LEXIS 53852

July 25, 2007, Decided

**COUNSEL:** [*1] For BRANDON V., A MINOR, BY
AND THROUGH HIS PARENT, DEBRA P., DEBRA
P., AN ADULT, INDIVIDUALLY AND ON HER
OWN BEHALF, Plaintiffs: CARMEN P. BELEFONTE,
LEAD ATTORNEY, LAW OFFICES OF CARMEN P.
BELEFONTE, MEDIA, PA; DENNIS C. MCAN-
DREWS, GABRIELLE C. SERENI, HEIDI
KONKLER-GOLDSMITH, LEAD ATTORNEYS,
MCANDREWS LAW OFFICES, PC, BERWYN, PA.

For THE CHICHESTER SCHOOL DISTRICT, Defen-
dant: MICHAEL I. LEVIN, LEAD ATTORNEY,
GLENNA M. HAZELTINE, LEVIN LEGAL GROUP,
P.C., HUNTINGDON VALLEY, PA.

For DELAWARE COUNTY INTERMEDIATE UNIT,
Defendant: MICHAEL V. PUPPIO, JR., LEAD AT-
TORNEY, RAFFAELE & PUPPIO, LLP, MEDIA, PA;
GLENNA M. HAZELTINE, LEVIN LEGAL GROUP,
P.C., HUNTINGDON VALLEY, PA.

**JUDGES:** Michael M. Baylson, U.S.D.J.

**OPINION BY:** Michael M. Baylson

**OPINION**

***MEMORANDUM***

**Baylson, J.**

**I. *Background***

Plaintiffs, Brandon V. (a minor child with disabili-
ties) and Debra P. (his parent), filed this action against
the Chichester School District and Delaware County
Intermediate Unit ("DCIU"), [1] alleging violations of (1)
the Individuals with Disabilities Education Act
("IDEA"), 20 U.S.C. § 1400 et seq.; (2) Section 504 of

the Rehabilitation Act of 1973 ("§ 504"); (3) 42 U.S.C. §
1983 ("§ 1983"); and (4) the due process and equal pro-
tection clauses of the Fourteenth Amendment. [*2]
Plaintiffs assert that Defendants failed to provide Bran-
don with a safe and appropriate education program and
placement from the 2003-2004 school year to the pre-
sent. (Complaint P 26). Specifically, they allege that
John Volikas, a DCIU employee, physically and men-
tally abused Brandon and other students on numerous
occasions, culminating in a sexual assault on November
11, 2004 for which Volikas was arrested and pleaded
nolo contendere. (*Id.* P 27). The sexual assault, along
with the lack of appropriate programming and instruc-
tion, has resulted in a significant regression in Brandon's
behavior and skills. (*Id.* P 36). Plaintiffs seek compensa-
tory damages, attorneys' fees and costs.

> 1   DCIU is the entity that contracted with the
> Chichester School District to provide special
> education programs to students like Brandon.

Presently before the Court is Defendants' motion to
dismiss the complaint for lack of subject matter jurisdic-
tion pursuant to Federal Rule of Civil Procedure
12(b)(1), and for failure to state a claim under 12(b)(6).
The Court permitted the parties to file supplemental
briefing on Brandon's current educational situation, and
on the impact of the recent Third Circuit decision, [*3]
*A.W. v. Jersey City Public Schools,* 486 F.3d 791 (3d Cir.
2007). For the reasons set forth below, Defendants' mo-
tion is granted in part, and denied in part.

**II. *Legal Standards***

When deciding a motion to dismiss for lack of sub-
ject matter jurisdiction pursuant to Rule 12(b)(1), the
plaintiff bears the burden of persuading the Court that
subject matter jurisdiction exists. *Kehr Packages, Inc. v.
Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir. 1991). The
court "may not presume the truthfulness of plaintiff's

allegations, but rather must evaluate for itself the merits of the jurisdictional claims." *Hedges v. United States,* 404 F.3d 744, 750 (3d Cir. 2005) (brackets omitted) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977)).

When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court may look only to the facts alleged in the complaint and its attachments. *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir. 1994). The Court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff. *Angelastro v. Prudential-Bache Sec., Inc.,* 764 F.2d 939, 944 (3d Cir. 1985). [*4] A Rule 12(b)(6) motion will be granted only when it is certain that no relief could be granted under any set of facts that could be proved by the plaintiff. *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir. 1988).

### III. *Discussion*

#### A. Count I - IDEA, § 504 and § 1983

Count One alleges that "Defendants failed to provide Brandon with a safe, appropriate educational program and placement . . . in violation of IDEA, Section 504 and Section 1983." (Complaint P 44). Defendants contend this Court does not have subject matter jurisdiction to hear this claim because Plaintiffs have failed to exhaust their administrative remedies. Additionally, Defendants assert that the claim fails under 12(b)(6) because it is based on alleged criminal or tortious conduct which is not cognizable under the IDEA or § 504.

#### 1. *§ 1983 Claims Predicated on IDEA and § 504*

In *W.B. v. Matula,* 67 F.3d 484 (3d Cir. 1995), the Third Circuit held that § 1983 supplies a private right of action for plaintiffs alleging violations of the IDEA and § 504. *Id.* at 493-494. Recently, in *A.W. v. Jersey City Public Schools,* 486 F.3d 791 (3d Cir. 2007), the Third Circuit overruled this aspect of *Matula,* based on the Supreme Court's decision [*5] in *City of Rancho Palos Verdes v. Abrams,* 544 U.S. 113, 125 S. Ct. 1453, 161 L. Ed. 2d 316 (2005) (discussing the availability of § 1983 as a vehicle for redressing violations of federal statutory rights and concluding that plaintiffs may not enforce the Telecommunications Act through a § 1983 action). Applying the "method of analysis outlined in *Rancho Palos Verdes*" to IDEA and § 504, the Third Circuit concluded that "Congress did not intend § 1983 to be available to remedy violations of the IDEA [and Section 504]." *A.W.,* 486 F.3d at 803-806. Both statutes contain private judicial remedies, and there is no "textual indication" that Congress intended the remedial schemes to "complement, rather than supplant, § 1983." *Id.* at 802-04. Because there is no remedy under § 1983 for violations of

IDEA and § 504, the Court will dismiss Plaintiffs' § 1983 claims with prejudice.

#### 2. *Claims Directly Under IDEA and § 504*

Plaintiffs have also asserted claims directly under the IDEA and § 504. [2] As an initial matter, the Court must determine whether compensatory damages are available under either statute.

> 2   *See* Complaint P 1 ("[Plaintiffs are] seeking compensatory damages and reasonable attorneys['] fees under the IDEA, Section 504, and [*6] Section 1983."); *Id.* PP 42-44 (alleging that "Defendants failed to provide Brandon with a safe, appropriate educational program and placement . . . in violation of IDEA, Section 504 and Section 1983.").

#### a. *Availability of Compensatory Damages*

#### I. *IDEA*

The IDEA provides that in a civil action, the court "shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii). The Third Circuit has yet to decide whether "appropriate relief" under the IDEA includes compensatory damages. *See C.M. v. Bd. of Educ. of Union County Reg'l High Sch. Dist.,* 128 Fed. Appx. 876, 880 (3d Cir. 2005) (NPO) (recognizing that the Third Circuit has "not settled whether damages are recoverable in an action arising solely under IDEA"); *Bucks County Dep't of Mental Health/Mental Retardation v. Pennsylvania,* 379 F.3d 61, 68 n.5 (3d Cir. 2004) (same); *Hesling v. Avon Grove Sch. Dist.,* 428 F.Supp.2d 262, 273 (E.D. Pa. 2006) (same). The court did not have occasion to address this issue in *A.W.* because A.W. did not bring claims directly under IDEA or § 504. *A.W.,* 486 F.3d at 794 n.4.

The Courts of Appeals that have addressed this issue uniformly have held that IDEA (or its predecessor) bars [*7] compensatory damages. *See, e.g., Nieves-Marquez v. Puerto Rico,* 353 F.3d 108, 125 (1st Cir. 2003) (concluding money damages are not available under the IDEA because "IDEA's primary purpose is to ensure [a free appropriate public education], not to serve as a tort-like mechanism for compensating personal injury"); *Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.,* 288 F.3d 478, 483-86 (2d Cir. 2002) ("We therefore hold that monetary damages are not available under the IDEA."); *Sellers by Sellers v. School Bd.,* 141 F.3d 524, 526-28 (4th Cir. 1998) (holding that "tort-like damages" are unavailable under the IDEA because they are "inconsistent with IDEA's statutory scheme" and "present acute problems of measurability"); *Marvin H. v. Austin Indep. Sch. Dist.,* 714 F.2d 1348, 1356-57 (5th Cir. 1983) ("appropriate relief" authorized by EHA

(IDEA's predecessor) includes only prospective relief, and "a damage remedy is not generally consistent with the goals of the statute"); *Crocker v. Tenn. Secondary Sch. Athletic Ass'n,* 980 F.2d 382, 386-87 (6th Cir. 1992) ("appropriate relief" under EHA includes restitutionary types of relief, but not general damages for emotional injury or injury [*8] to a dignitary interest); *Charlie F. by Neil F. v. Board of Educ.,* 98 F.3d 989, 991 (7th Cir. 1996) ("[D]amages are not 'relief that is available under' the IDEA."); *Heidemann v. Rother,* 84 F.3d 1021, 1033 (8th Cir. 1996) (plaintiffs' claims that defendants violated IDEA by tightly wrapping disabled student in a blanket as a form of physical restraint may not be pursued in a § 1983 action because general and punitive damages for this type of alleged injury are not available under the IDEA); *Witte v. Clark County Sch. Dist.,* 197 F.3d 1271, 1275 (9th Cir. 1999) ("Although the IDEA allows courts to grant 'such relief as the court determines is appropriate,' ordinarily monetary damages are not available under that statute."); *Powell v. Defore,* 699 F.2d 1078, 1081 (11th Cir. 1983) (recognizing that "[a]s a general rule, compensatory damages are not available under the [EHA]").

The Court agrees with the overwhelming weight of authority that compensatory damages are generally inconsistent with the purpose and statutory scheme of the IDEA, and until the Third Circuit holds otherwise, will not recognize damages as an available form of relief in IDEA actions. Because Plaintiffs are only [*9] seeking monetary damages from Defendants, their IDEA claims are dismissed with prejudice.

### ii. § 504

In *Matula,* the Third Circuit held that "plaintiffs may seek monetary damages directly under § 504," based on the general presumption that all appropriate remedies are available "unless Congress has expressly indicated otherwise." *Matula,* 67 F.3d at 494 (quoting *Franklin v. Gwinnett County Pub. Sch.,* 503 U.S. 60, 66, 112 S. Ct. 1028, 117 L. Ed. 2d 208 (1992)). In *Franklin,* the Supreme Court held that monetary damages are an available remedy in a Title IX action. Because the Rehabilitation Act incorporates Title VI's remedies, and Title IX is modeled after Title VI, the Third Circuit concluded that the Supreme Court's "holding on Title IX in *Franklin* applies equally to Title VI and Section 504 cases." *Matula,* 67 F.3d at 494 (quoting *Rodgers v. Magnet Cove Pub. Schs.,* 34 F.3d 642, 645 (8th Cir. 1994)). *See Jeremy H. v. Mount Lebanon Sch. Dist.,* 95 F.3d 272, 279 (3d Cir. 1996) ("We also found in *Matula* that both injunctive relief and monetary damages are available under section 504.").

The Third Circuit did not address this aspect of *Matula* in *A.W.* because, as noted above, plaintiff did not bring a claim directly under § 504. *A.W.,* 486 F.3d at 794 n.4. [*10] [3] Accordingly, the Court will continue to treat *Matula*'s holding regarding the availability of compensatory damages under the Rehabilitation Act as authoritative.

> 3 Notably, in discussing the means of redress available under the Rehabilitation Act, the Third Circuit stated:
>
> > The remedies for violation of Section 504 "are coextensive with the remedies available in a private cause of action brought under Title VI. . . ." *These remedies include compensatory damages,* injunctive relief, and other forms of relief traditionally available in suits for breach of contract.
>
> *A.W.,* 486 F.3d at 804 (quoting *Barnes v. Gorman,* 536 U.S. 181, 185, 122 S. Ct. 2097, 153 L. Ed. 2d 230 (2002)) (emphasis added).

### b. *Failure to Exhaust Administrative Remedies*

Both parties agree that Plaintiffs have failed to exhaust their administrative remedies for their IDEA and Section 504 claims. [4] Plaintiffs claim, however, that exhaustion would be futile because they are only seeking compensatory damages which cannot be awarded in an administrative proceeding. The IDEA requires plaintiffs to exhaust all *available* administrative remedies before suing in federal court. 20 U.S.C. § 1415(f). Administrative exhaustion is required for Section 504 claims to the extent [*11] the claims seek relief that is also available under IDEA. 20 U.S.C. § 1415(l). *See M.M. v. Tredyffrin/Easttown Sch. Dist.,* Civ.A.No. 06-1966, 2006 U.S. Dist. LEXIS 62918, 2006 WL 2561242, at *8 (E.D. Pa. Sept. 1, 2006) ("Plaintiffs' Section 504 claim requires exhaustion because the IDEA administrative process offers potential relief for the injuries that M. allegedly suffered as a result of Defendants' discrimination.").

> 4 Because the Court is dismissing Plaintiffs' IDEA claims with prejudice (*see supra* pp. 4-6), this exhaustion discussion relates only to Plaintiffs' claims under Section 504.

The Third Circuit has held that exhaustion is excused where recourse to the administrative proceedings would be futile or inadequate, the issue presented is purely a legal question, or the administrative agency cannot grant the requested relief. *Komninos v. Upper Saddle River Bd. of Educ.,* 13 F.3d 775, 778 (3d Cir. 1994). In *Matula,* the court excused plaintiffs' failure to

exhaust because they only sought compensatory damages for the school district's refusal to evaluate, classify and provide necessary educational services for their son. [5] The court reasoned that the "plain language" of the IDEA requires exhaustion only in "actions [*12] seeking relief 'also available' under IDEA," and the "IDEA itself makes no mention" of damages as a form of relief. *Id.* at 496. The court also cited a "second rationale" for excusing exhaustion: the plaintiffs had already participated in several administrative hearings dealing with the disabled student's classification and placement, and so a factual record was fully developed. *Id.* [6] The only remaining issue to be resolved was damages and, therefore, further recourse to the administrative proceedings would have been futile.

> 5    Although *A.W.* overruled *Matula* with respect to a plaintiff's ability to bring a § 1983 action to enforce IDEA and § 504, the court did not discuss *Matula*'s holding regarding exhaustion, and we will continue to rely on it.

> 6    In April 1993, W.B. and the school board had reached a settlement agreement, incorporating an Individual Education Plan ("IEP") for the 1993-94 school year. Shortly thereafter, W.B. requested certain modifications to the IEP, and asked that her son, E.J., be placed in a private school. After several more administrative proceedings, the ALJ ordered the school board to pay for E.J.'s private education and sessions with a private therapist, reimburse [*13] W.B. for the cost of an independent learning disability evaluation, and provide a supplemental occupational therapy evaluation. *Id.* at 490.

A few courts have broadly interpreted *Matula* to mean that whenever a plaintiff sues under the IDEA and only requests monetary damages, exhaustion is excused. *See, e.g., Colon v. Colonial Intermediate Unit 20*, 443 F.Supp.2d 659, 668 (M.D. Pa. 2006) (excusing exhaustion under *Matula* because plaintiffs sought compensatory damages); *Irene B. v. Phila. Acad. Charter Sch.*, No.Civ.A. 02-1716, 2003 U.S. Dist. LEXIS 3020, 2003 WL 24052009, at *7 (E.D. Pa. Jan. 29, 2003) (when plaintiffs have "restricted their claims . . . to compensatory and punitive damages . . . the rule of *Matula* dictates [that] the futility exception applies to excuse [their] failure to exhaust"); *McCachren v. Blacklick Valley Sch. Dist.*, 217 F.Supp.2d 594, 597 (W.D. Pa. 2002) (despite defendants' "various protestations about the propriety of first seeking administrative relief under the IDEA," *Matula* "conclusively" establishes that IDEA's exhaustion requirement does not apply to actions seeking monetary damages); *Jeffery Y. v. St. Marys Area Sch. Dist.*, 967 F.Supp. 852 (W.D. Pa. 1997) (*Matula* is "disposi-

tive" [*14] where plaintiff only seeks damages and not injunctive relief).

Other courts have narrowly read *Matula* as not excusing exhaustion if the factual record is undeveloped, and there are outstanding issues that could be addressed in an administrative proceeding, *regardless* of the type of relief sought by the plaintiff. *See, e.g., Gutin v. Washington Twp. Bd. of Educ.*, 467 F.Supp.2d 414, 428 (D.N.J. 2006) (*Matula* did not mandate that "all suits for money damages are excused from the exhaustion requirement"); *Blanck v. Exeter Sch. Dist.*, No.Civ.A. 01-1402, 2002 U.S. Dist. LEXIS 19101, 2002 WL 31247983 (E.D. Pa. Oct. 2. 2002) (although plaintiff only sought monetary damages, exhaustion was not futile because the factual record was not fully developed and there were still evidentiary disputes to be resolved); *Lindsley v. Girard Sch. Dist.*, 213 F.Supp.2d 523, 534 (W.D. Pa. 2002) (*Matula* did not "stand for the proposition" that exhaustion is excused whenever a plaintiff seeks monetary damages "regardless of the factual backdrop against which that request is made"). [7] In the absence of more precise guidance from the Third Circuit, the Court will follow this line of cases, and not excuse exhaustion if the administrative process [*15] is capable of providing Plaintiffs *some* form of relief, even though they have only requested compensatory damages.

> 7    A number of other courts have recognized that the "fact that the parties [in *Matula*] had already participated in various administrative proceedings . . . and the only unresolved issue was whether damages should be awarded," was "central to the [Third Circuit's] decision" to excuse exhaustion. *Hesling v. Avon Grove Sch. Dist.*, 428 F.Supp.2d 262, 275 (E.D. Pa. 2006). *See also M.M. v. Tredyffrin/Easttown Sch. Dist.*, Civ.A.No. 06-1966, 2006 U.S. Dist. LEXIS 62918, 2006 WL 2561242, at *7 (E.D. Pa. Sept. 1, 2006) (distinguishing *Matula* because in that case, plaintiffs had undergone extensive administrative proceedings, the factual record was fully developed, and all substantive issues had been resolved); *Falzett v. Pocono Mountain Sch. Dist.*, 150 F.Supp.2d 699, 704 (M.D. Pa. 2001) ("Two additional considerations were central to the [*Matula*] court's holding. First, the parties . . . had participated in an extended series of administrative proceedings . . . which resulted in the development of an extensive factual record. . . . Second, all issues . . . other than the damages issue had been resolved by prior [*16] administrative proceedings.").

In each of these cases, however, the plaintiffs sought relief *in addition* to damages, and the courts ultimately rested their decision to excuse

Page 4

exhaustion on these grounds. *See M.M.,* 2006 U.S. Dist. LEXIS 62918, 2006 WL 2561242, at *7 (plaintiffs sought "equitable relief in addition to damages"); *Hesling,* 428 F.Supp.2d at 275 (*Matula* was not controlling because "at least part of the relief sought by [plaintiff] - declaratory relief for violation of her rights under the IDEA - is available through the statute's administrative proceedings"); *Falzett,* 150 F.Supp.2d at 705 (plaintiffs sought tuition reimbursement as well as damages).

In this case, the Court finds that resort to the administrative process would *not* be futile, and Plaintiffs are required to exhaust their § 504 claims before bringing an action in this Court. Plaintiffs have alleged that Brandon's behavior and skills significantly regressed as a result of the abuse he suffered in the DCIU classroom during the 2003-2004 school year, and the lack of appropriate programming and instruction. (Complaint PP 36-41). The problems Plaintiffs describe in their Complaint have both an educational source and educational consequences, and [*17] are most appropriately addressed in the first instance by IDEA's comprehensive administrative process. Allowing Plaintiffs to "forego remedies available under IDEA that might compensate [them] for [their] alleged loss . . . is contrary [to] IDEA's scheme, under which 'educational professionals are supposed to have at least the first crack at formulating a plan to overcome the consequences of educational shortfalls.'" *Lindsley,* 213 F.Supp.2d at 537 (quoting *Charlie F. by Neil F. v. Board of Educ.,* 98 F.3d 989, 993 (7th Cir. 1996)). Although Plaintiffs claim they are "satisfied" with Brandon's current educational programming (*see* Plaintiffs' Letter to the Court, May 11, 2007), the administrative process is still valuable, as the IDEA and its implementing regulations provide a wide range of services that may enable Brandon to overcome the adverse effects of the abuse he suffered during the 2003-2004 school year. As the Seventh Circuit observed in *Charlie F.:*

> Charlie's parents believe that his current educational program is apt. . . . [I]f he is doing fine in school today, then it is hard to see what this case is about. . . . Perhaps Charlie's adverse reaction to the events of fourth [*18] grade cannot be overcome by services available under the IDEA and the regulations, so that in the end money is the only balm. But parents cannot know that without asking, any more than we can.

98 F.3d 993. Exhaustion will also provide this Court with "a valuable record" on appeal. *Lindsley,* 213 F.Supp.2d at

538. *See Falzett v. Pocono Mountain Sch. Dist.,* 150 F.Supp.2d 699, 702 (M.D. Pa. 2001) ("[E]xhaustion . . . enables the agency to develop a factual record, to apply its expertise to the problem, to exercise its discretion, and to correct its own mistakes, and is credited with promoting accuracy, efficiency, agency autonomy, and judicial economy."). Accordingly, the Court concludes exhaustion would not be futile, and Plaintiffs' § 504 claims are dismissed without prejudice.

### c. *Failure to State a Claim*

Defendants also contend that Plaintiffs' IDEA and § 504 claims fail because tortious and criminal conduct is not within the purview of either statute. Defendants cite no authority for this proposition, nor were we able to find any. *Cf. M.M. v. Tredyffrin/Easttown Sch. Dist.,* Civ.A.No. 06-1966, 2006 U.S. Dist. LEXIS 62918, 2006 WL 2561242 (E.D. Pa. Sept. 1, 2006) (IDEA and § 504 claims predicated on teacher's severe [*19] harassment of disabled child, which culminated in the teacher deliberately stepping on his finger); *Witte v. Clark County Sch. Dist.,* 197 F.3d 1271 (9th Cir. 1999) (IDEA claim predicated on severe physical and emotional abuse of disabled student by teachers). Accordingly, Defendants' motion to dismiss Count I pursuant to Rule 12(b)(6) is denied.

### B. *Remaining Counts*

#### 1. *Due Process Claims (Counts II and III)*

Plaintiffs also allege that Defendants violated Brandon's Fourteenth Amendment due process right to bodily integrity, based on three separate theories of municipal liability: (1) the state created a danger that resulted in a violation of Plaintiffs' constitutional rights ("state-created danger") (Count II); (2) a special relationship existed between the state and Brandon, which gave rise to an affirmative duty to protect him from harm (Count II); and (3) the Defendants established and maintained a custom, practice or policy of deliberate or reckless indifference to Plaintiffs' constitutional rights (Count III). [8]

> 8   Plaintiffs separate their due process allegations into two counts in the Complaint. Count II claims Defendants are liable under § 1983 based on the state-created danger and [*20] special relationship theories, and Count III asserts that Defendants violated Brandon's due process right to bodily integrity under § 1983. This division is analytically incorrect. The substantive due process right to bodily integrity is the constitutional right at issue. "State-created danger", "special relationship", and "custom, practice or policy" are three *independent theories of municipal liability* for alleged violations of this constitutional right.

Count II clearly asserts the "state-created danger" and "special relationship" theories of liability, and the Court will interpret Count III as pleading the "custom, practice or policy" theory. *See* Complaint P 51 (alleging a due process violation under § 1983, and citing Third Circuit cases that treat a "state-established policy, custom or practice" as an independent basis for liability).

Defendants contend that Plaintiffs' due process claims must be dismissed because Plaintiffs have not alleged that the school district acted pursuant to a custom, practice or policy. Maintaining an unconstitutional custom, practice or policy, however, is only one basis for municipal liability: "special relationship" and "state-created danger" are separate [*21] theories of constitutional liability which Plaintiffs have pled and are entitled to prove. *See Stoneking v. Bradford Area Sch. Dist.,* 882 F.2d 720, 725 (3d Cir. 1989) ("Liability of municipal policymakers for policies or customs chosen or recklessly maintained is not dependent upon the existence of a 'special relationship' between the municipal officials and the individuals harmed."); *D.R. v. Middle Bucks Area Vocational Technical Sch.,* 972 F.2d 1364, 1376 (3d Cir. 1992) ("custom, practice or policy" is a separate "theory of constitutional liability that is viable even in the absence of a special relationship duty").

Moreover, the Court concludes that Plaintiffs have sufficiently identified an unconstitutional practice, custom or policy for 12(b)(6) purposes. In their complaint, Plaintiffs allege that between October 22, 2004 and November 3, 2004, "there were at least three prior incident reports of John Volikas physically or mentally assaulting Brandon." (Complaint PP 28-32). Despite these reports, Volikas remained in Brandon's classroom, and was allowed to be alone with him in a locked bathroom stall on November 11, 2004, when the sexual assault took place. (*Id.* P 33). Prior to Brandon's [*22] assault, a "wraparound coordinator" who regularly visited Brandon's classroom reported that the "children [were] falling apart," and Volikas was "sabotaging" Brandon's behavioral program. (*Id.* PP 34-35). The coordinator also expressed concerns about the "appropriateness of the teacher's interventions," and his ability to "understand the specific needs of multi-handicapped children." (*Id.* P 34). Plaintiffs further claim that during the 2003-2004 school year, Brandon witnessed the physical abuse of another student by the classroom teacher. (*Id.* P 34).

At this stage of the proceedings, Plaintiffs' allegations that the school district and DCIU were deliberately indifferent to the misconduct of teachers are sufficient to satisfy the terms of *Monell.* Accordingly, the Court will not dismiss Plaintiffs' due process claim based on the "special relationship", "state-created danger", or "custom, policy or practice" theories of municipal liability.

### 2. *Equal Protection Claim (Count IV)*

Plaintiffs also allege that Defendants purposefully treated Brandon differently from his similarly situated peers in violation of his equal protection rights under the Fourteenth Amendment. (Complaint P 53). For the [*23] reasons discussed above, the Court concludes that Plaintiffs have sufficiently pled municipal liability under *Monell,* and therefore may proceed with this claim.

### 3. *Loss of Consortium Claim (Count V)*

Finally, Brandon's mother, Debra P., has brought a claim for the denial of her right to the "comfort, companionship and society" of her son as a result of the abuse Brandon suffered, and "Defendants' continual failures" to provide him with a free appropriate public education ("FAPE"). (Complaint P 56). The Court has found no authoritative precedent that would preclude such a claim, and will therefore allow Plaintiffs to pursue it.

### IV. *Conclusion*

For the reasons stated above, Plaintiffs' claims are disposed of as follows:

1. Plaintiffs' § 1983 claims, alleging violations of IDEA and § 504, are dismissed with prejudice in light of *A.W. v. Jersey City Public Schools,* 486 F.3d 791 (3d Cir. 2007).

2. Plaintiffs' direct IDEA claims are dismissed with prejudice because the Court concludes that compensatory damages are not an available remedy under the IDEA, and this is the only form of relief Plaintiffs seek.

3. Plaintiffs' direct § 504 claims are dismissed without prejudice, pending Plaintiffs' exhaustion [*24] of their administrative remedies.

4. Plaintiffs' due process, equal protection and consortium claims will not be dismissed.

An appropriate Order follows.

### *ORDER*

AND NOW, this 25th day of July, 2007, it is hereby ORDERED that Defendants' Motion to Dismiss (Doc. No. 12) is disposed of as follows:

Page 6

2007 U.S. Dist. LEXIS 53852, *

1. Plaintiffs' § 1983 claims predicated on IDEA and § 504 are dismissed with prejudice. (Count I)

2. Plaintiffs' claims brought directly under the IDEA are dismissed with prejudice. (Count I).

3. Plaintiffs' claims brought directly under § 504 are dismissed without prejudice, pending exhaustion of administrative remedies. (Count I).

4. Plaintiffs' due process, equal protection, and loss of consortium claims are not dismissed. (Counts II, III and IV).

The Court will promptly schedule a telephone conference with all parties to discuss how to proceed from this point.

BY THE COURT:

/s/ **Michael M. Baylson**, U.S.D.J.

LEXSEE

**K.H., on behalf of minor child, B.Y., Plaintiff, v. NORTH HUNTERDON-VOORHEES REGIONAL HIGH SCHOOL HUNTERDON CO., NEW JERSEY, Defendant.**

**Civ. No. 05-4925 (AET)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

**2006 U.S. Dist. LEXIS 55522**

**August 10, 2006, Decided**

**COUNSEL:** [*1] For K.H., O/B/O MINOR CHILD, B. Y., Plaintiff: HARRIET K. GORDON, LAW OFFICE OF HARRIET K. GORDON, RANDOLPH, NJ.

For NORTH HUNTERDON-VOORHEES REGIONAL HIGH SCHOOL HUNTERDON CO., NEW JERSEY, Defendant: PAUL N. BARGER, BARGER & BOLGER, ESQS., CHATHAM, NJ.

**JUDGES:** Anne E. Thompson, U.S.D.J.

**OPINION BY:** Anne E. Thompson

**OPINION**

***MEMORANDUM OPINION***

*THOMPSON, U.S.D.J*

*I. Introduction*

This matter is before the Court on the parties' cross-motions for summary judgment pursuant to Fed. R. Civ. P. 56(c). The Court has jurisdiction over this matter under 20 U.S.C. § 1415(i)(2). The Court has made its determination after considering the written submissions of the parties, and without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons set forth below, both motions are granted in part and denied in part.

*II. Background*

This case arises under the Individuals with Disabilities Education Act ("IDEA"), and raises the issue of whether Defendant North Hunterdon-Voorhees Regional High School District Board of Education ("North Hunterdon" or "Defendant") should be [*2] required to reimburse Plaintiff K.H. for the unilateral placement of her daughter B.Y. in private school for part of the 2003-2004 school year and the entire 2004-2005 school year.

*A. Individuals with Disabilities Education Act*

Under the IDEA, Congress granted federal funding to the states for special education programs, contingent on the states providing a "free appropriate public education" ("FAPE") to disabled children. 20 U.S.C. § 1400(d)(1)(A). FAPE is defined as

> special education and related services that -- (A) have been provided at public expense, under public supervision and direction, and without charge; (B) meet the standards of the State educational agency; (C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and (D) are provided in conformity with [an] individualized education program . . . .

20 U.S.C. § 1401(9). In *Rowley,* the Supreme Court held that a state satisfied the FAPE requirement when that state provided "personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction. [*3] " *Bd. of Educ. v. Rowley,* 458 U.S. 176, 203, 102 S. Ct. 3034, 73 L. Ed. 2d 690 (1982). The state must offer access to education that is "meaningful," *Ridgewood Bd. of Educ. v. N.E.,* 172 F.3d 238, 247 (3d Cir. 1999), but does not need to offer education that "maximize[s] each child's potential," *Rowley,* 458 U.S. at 198. The IDEA also requires that children with disabilities be educated in the "least restrictive environment" ("LRE"). 20 U.S.C. § 1412(a)(5). This requirement establishes a strong preference for mainstreaming disabled children by educating them with non-

Page 1

disabled children to the maximum extent possible. *See id.*

At its core, the IDEA requires that an Individualized Education Program ("IEP") be designed for each disabled child. 20 U.S.C. § 1414(d); *S.H. v. State-Operated Sch. Dist.*, 336 F.3d 260, 264 (3d Cir. 2003). The IEP sets forth the goals and objectives which will be used to determine whether the child is receiving a FAPE. 20 U.S.C. § 1414(d); *S.H.*, 336 F.3d at 264. The IEP is developed by a team composed of the child's parents, the child's [*4] regular and special education teachers, a curriculum specialist from the school district, and in addition, if requested by the parents or the school, anyone with special knowledge or expertise related to the child's education. 20 U.S.C. § 1414(d)(1)(B); *S.H.*, 336 F.3d at 264. In New Jersey, the IEP is developed by a school district's Child Study Team ("CST"), composed of a school psychologist, a learning disabilities teacher-consultant, and a school social worker, along with the child's parents, a teacher familiar with the child, and other appropriate school personnel. N.J. Admin. Code § 6A:14-2.3(i); *S.H.*, 336 F.3d at 264-65. The IEP is reviewed at least annually to determine whether the child is reaching the stated goals, and is revised as necessary. 20 U.S.C. § 1414(d)(4); *S.H.*, 336 F.3d at 265.

Parents who unilaterally withdraw their child from public school and place him or her in private school without consent from the school district "do so at their own financial risk." *Sch. Comm. of Burlington v. Dep't of Educ. of Mass.*, 471 U.S. 359, 374, 105 S. Ct. 1996, 85 L. Ed. 2d 385 (1985). They may be [*5] entitled to reimbursement for tuition costs for their unilateral private placement only if a court finds that the proposed IEP was inappropriate and the private placement was appropriate under the IDEA. 20 U.S.C. § 1412(a)(10)(C)(ii); N.J. Admin. Code § 6A:14-2.10(b); *Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7, 15, 114 S. Ct. 361, 126 L. Ed. 2d 284 (1993). A court may reduce or deny reimbursement costs based on the parents' unreasonable behavior during the IEP process. 20 U.S.C. § 1412(a)(10)(C)(iii); N.J. Admin. Code § 6A:14-2.10(c); *see B.G. v. Cranford Bd. of Educ.*, 702 F. Supp. 1158, 1166 (D.N.J. 1988).

In New Jersey, parents who disagree with a school district's proposed IEP may challenge the IEP in a due process hearing, which is adjudicated by an Administrative Law Judge ("ALJ"). N.J. Admin. Code § 6A:14-2.7; *Lascari v. Bd. of Educ.*, 116 N.J. 30, 37, 560 A.2d 1180 (1989). The ALJ's final decision may then be appealed by any aggrieved party through a civil action filed in state or federal court. 20 U.S.C. § 1415(i)(2).

*B. Relevant Case History*

B.Y. is a seventeen year old girl who has [*6] been classified as eligible for special education and related services under the "specific learning disability" category. While a third grader at a school in Germany, B.Y. was diagnosed with dyslexia. After this diagnosis, she attended a boarding school in England to address her dyslexia. When B.Y.'s family moved to Clinton Township, New Jersey in 2000, B.Y. was enrolled in sixth grade at Round Valley Middle School, which is operated by the Clinton Township Board of Education. B.Y. was found eligible for special education and related services in November 2000, and received special education services for part of sixth grade until eighth grade. Plaintiff K.H., B.Y.'s mother, and T.H., B.Y.'s father, were both dissatisfied with the services offered under B.Y.'s IEP.

After completion of eighth grade at Round Valley Middle School, students residing in Clinton Township automatically go on to attend high school at North Hunterdon High School. Defendant North Hunterdon, which is a separate entity from the Clinton Township Board of Education, operates North Hunterdon High School. To prepare for B.Y.'s transition to high school after her eighth grade year, Defendant's CST held meetings with [*7] Plaintiff and T.H. in January 2003, February 2003, May 2003, and July 2003. Plaintiff and T.H. chose not to accept the proposed IEP issued on July 9, 2003. Instead, Plaintiff and her family relocated to their summer home at Point Pleasant Beach, and B.Y. was enrolled in ninth grade at Point Pleasant Beach High School.

On November 25, 2003, T.H. notified the Point Pleasant Beach High School District that he and Plaintiff believed that B.Y.'s needs were not being met, and that B.Y. would be attending the Craig School in Mountain Lakes, New Jersey, for the remainder of the 2003-2004 school year. On February 25, 2004, Plaintiff and T.H. enrolled B.Y. in North Hunterdon High School. Defendant scheduled a meeting for March 25, 2004 to discuss B.Y.'s IEP and transition to the high school. The meeting was rescheduled for April 2, 2004 at Plaintiff and T.H.'s request. At that meeting, Defendant agreed to conduct various assessments on B.Y. to aid in developing an IEP. Defendant's CST issued a draft IEP on June 23, 2004, which offered in-class support for B.Y.'s classes in World History, English II, Chemistry, and Geometry, as well as pull-out Study Skills and Reading in the Resource Center. [*8] (Certification of Paul N. Barger, Ex. H at 17-18, 22 [hereinafter Barger Certification].) Plaintiff and T.H. requested some time to think over the draft IEP, and said that their attorney, Ms. Harriet Gordon, would contact Defendant to schedule another meeting to complete the IEP process.

On July 21, 2004, Ms. Gordon notified Defendant that her clients rejected the proposed IEP and would file

Page 2

a due process petition. Defendant responded by letter to Ms. Gordon on July 23, 2004, and indicated that it would proceed with the IEP process. Defendant scheduled the final IEP meeting for August 30, 2004, and notified Ms. Gordon and her clients of this meeting on August 20, 2004. On the day of the meeting, Ms. Gordon wrote a letter informing Defendant that her clients rejected the proposed IEP and had selected another school for B.Y. to attend. Although the chosen school was not named in this letter, other letters from Ms. Gordon, dated August 30, 2004 and February 24, 2005, indicate that B.Y. was enrolled at the Kildonan School in New York State for the 2004-2005 school year. (Pl.'s Br. in Reply, Exs. C & D.) In August 2005, Plaintiff and T.H. relocated their family to the State of Michigan, [*9] where presumably B.Y. is now being educated. (Pl.'s Br. in Supp., Aff. of K.H. P 2.)

Plaintiff filed her petition for a due process hearing with the New Jersey Department of Education, Office of Special Education Programs on October 15, 2004. The petition demanded that Defendant provide B.Y. with services similar to those offered at the Kildonan School and the Craig School, made applications for placement at both schools under the *Naples Act,* N.J. Stat. Ann. § 18A:46-14, and sought reimbursement for tuition and expenses related to Plaintiff's placement of B.Y. at the Kildonan School. The Commissioner of Education transmitted the request to the Office of Administrative Law on December 21, 2004. The hearing began on January 26, 2005 and was continued until June 2005. However, in May 2005, Defendant was granted an adjournment so that it could file a motion for summary decision that, if granted, would dispose of the matter. Defendant submitted its motion on June 2, 2005. The ALJ granted Defendant's motion in his July 15, 2005 decision and denied Plaintiff's petition.

Plaintiff, on behalf of B.Y., filed this action on October 11, 2005 to appeal the ALJ's [*10] decision. The parties subsequently filed their cross-motions for summary judgment on March 24, 2006. These motions raise the issues of (1) whether the ALJ properly interpreted N.J. Admin. Code § 6A:14-2.10(b) when he denied Plaintiff's petition and (2) whether the ALJ correctly determined that Plaintiff and T.H. behaved unreasonably in such a manner as to bar reimbursement under N.J. Admin. Code § 6A:14-2.10(c).

*III. Review of an ALJ's Decision Under the Individuals with Disabilities Education Act*

*A. Standard of Review*

In a case brought to appeal an ALJ's decision under the IDEA, the district court applies a "modified version of *de novo* review." *L.E. v. Ramsey Bd. of Educ.,* 435 F.3d 384, 389 (3d Cir. 2006). The district court "must make its own findings by a preponderance of evidence ... and must also afford 'due weight' to the ALJ's determination." *Shore Reg'l High Sch. Bd. of Educ. v. P.S.,* 381 F.3d 194, 198-99 (3d Cir. 2004) (quoting *Rowley,* 458 U.S. at 206) (citations omitted); *see also* 20 U.S.C. § 1415(i)(2)(C) ("[T]he [district] court (i) shall receive the records of the administrative [*11] proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."). Although the court gives due weight to the ALJ's factual findings, the court reviews the ALJ's legal determinations *de novo. Muller v. Comm. on Special Educ.,* 145 F.3d 95, 102 (2d Cir. 1998). The burden of proof in a proceeding to challenge an IEP is placed on the party seeking relief. *Ramsey,* 435 F.3d at 391-92.

*B. Analysis*

Where no new evidence has been presented to the Court, motions for summary judgment in an IDEA case are the procedural vehicle for asking the judge to decide the case based on the administrative record. *M.A. v. Voorhees Twp. Bd. of Educ.,* 202 F. Supp. 2d 345, 359 (D.N.J. 2002) (quoting *Heather S. v. Wisconsin,* 125 F.3d 1045, 1052 (7th Cir. 1997)).

*1. N.J. Admin. Code § 6A:14-2.10(b)*

The Court will apply *de novo* review to the ALJ's interpretation of N.J. Admin. Code § 6A:14-2.10(b). Under the regulation, certain prerequisites must be fulfilled before an ALJ can require [*12] a school district to reimburse parents for the unilateral placement of their child in private school. Namely,

> [i]f the parents of a student with a disability, who *previously received* special education and related services from the *district of residence,* enroll the student in a nonpublic school,... or approved private school for the disabled without the consent of or referral by the district board of education, an [ALJ] may require the district to reimburse the parents for the cost of that enrollment if the [ALJ] finds that the district had not made a free, appropriate public education available to that student in a timely manner prior to that enrollment and that the private placement is appropriate.

N.J. Admin. Code § 6A:14-2.10(b) (emphasis added).

Page 3

Based on the regulation, the ALJ concluded that B.Y. could not qualify for reimbursement because there was no evidence to show that she ever received special education and related services from Defendant, although B.Y. did receive such services when she attended Round Valley Middle School. The ALJ relied primarily on the *Gilbert F.* and *Somerset Hills* cases to support his decision. Both of these cases, [*13] however, are distinguishable from the case at hand because they involved students who did not receive special education or related services from any school district. *Bd. of Educ. v. Tom F. ex rel. Gilbert F.*, No. 01 Civ. 6845, 2005 U.S. Dist. LEXIS 49, at *1 (S.D.N.Y. Jan. 4, 2005); *B.G. v. Somerset Hills Reg'l Bd. of Educ.*, OAL Dkt. No. EDS 21-05, Agency Dkt. Nos. 2005-9586, 2005 N.J. AGEN LEXIS 147, at *2-5 (N.J. Office of Admin. Law, Mar. 17, 2005). The cases cited by Defendant can be similarly distinguished. *See, e.g., T.H. v. Clinton Twp.*, Civ. No. 05-3709, 2006 U.S. Dist. LEXIS 40358 (D.N.J. June 16, 2006).

The regulation requires the student to have *"previously received* special education and related services from *the district of residence."* N.J. Admin. Code § 6A:14-2.10(b) (emphasis added). Thus, applying a plain language reading of the regulation, B.Y. has fulfilled the "previously received" requirement because she received such services when she attended middle school in the school district where she resided. As noted in the *Watchung Hills* case, if the Court found otherwise, it would be placing students who transition [*14] from one designated school district to another when advancing from middle school to high school in an undesirable position. *J.B. v. Watchung Hills Reg. Sch. Dist. Bd. of Educ.*, No. 05-4722, 2006 U.S. Dist. LEXIS 250, at *20 (D.N.J. Jan. 5, 2006). For example, students who are placed in an outside placement for middle school as

> the only means of offering the child a meaningful FAPE ... would have to be removed from the current placement, re-enrolled in the new designated high-school district, and receive services from that new district for some minium period of time in order to maintain eligibility to seek reimbursement for an appropriate outside placement - regardless of the new district's ability to provide an appropriate FAPE for the child.

2006 U.S. Dist. LEXIS 250 at *20-21. Accordingly, the Court grants summary judgment to Plaintiff on this issue.

*2. N.J. Admin. Code § 6A:14-2.10(c)*

Although the ALJ based his decision primarily on the legal issue of statutory interpretation, he also went on to find that the parents forfeited their right to any equitable remedy to which they might have been entitled because they failed to meaningfully engage in the IEP process. [*15] *See* N.J. Admin. Code § 6A:14-2.10(c) (allowing an ALJ to deny or reduce reimbursement for the costs of a unilateral placement based on the parents' unreasonable behavior). Under the applicable standard of review, the Court must make its own findings and give due weight to the findings of the ALJ. *Shore Reg'l*, 381 F.3d at 198-99.

Based on the record submitted by the parties, the Court concludes that the preponderance of the evidence supports the ALJ's finding on this issue. Here, the record shows that the parents were unwilling to give Defendant a realistic opportunity to provide B.Y. with a FAPE as they had already made up their minds to send B.Y. to a private placement. For example, the parents had already enrolled their child at the Kildonan School before the final IEP meeting was held. (Pl.'s Br. in Reply, Ex. C.) Also, the parents failed to provide timely information about the services offered by the Craig School to assist with the development of B.Y.'s IEP. (Barger Certification, Exs. I, J, & K.) The parents stopped participating in the IEP process even though B.Y.'s IEP was still being developed. (Barger Certification, Exs. J & M.) Further, the parents [*16] did not file their due process petition until after B.Y. had started attending the Kildonan School. These actions show that the parents were determined to place their child in private school and did not wish to make the necessary effort to complete the IEP process. As a result, the Court will uphold the ALJ's determination that the parents forfeited their right to reimbursement, and summary judgment will be granted to Defendant on this issue. *See Greenland Sch. Dist. v. Amy N.*, 358 F.3d 150, 160 (1st Cir. 2004) (noting that reimbursement may be denied or reduced if the parents do not give the school district notice of their intent to remove their child from public school); *Schoenfeld v. Parkway Sch. Dist.*, 138 F.3d 379, 382 (8th Cir. 1998) (affirming district court ruling that parents' failure to seek an IEP before placing their child in private school precludes reimbursement under the IDEA); *Cranford Bd. of Educ.*, 702 F. Supp. at 1166 ("Conduct that disregards the participatory process cannot be ignored or condoned.").

*IV. Conclusion*

For the foregoing reasons, both of the parties' cross-motions for summary judgment are granted [*17] in part and denied in part. An appropriate order will be entered.

s/ Anne E. Thompson, U.S.D.J.

Dated: August 10, 2006

LEXSEE

**W.E.B., a minor child, Plaintiff, v. APPOQUINIMINK SCHOOL DISTRICT, and THE STATE OF DELAWARE DEPARTMENT OF EDUCATION, Defendants.**

**C.A. No. 01-499-SLR**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

**2003 U.S. Dist. LEXIS 12695**

**July 8, 2003, Decided**

**PRIOR HISTORY:** W.E.B. v. Appoquinimink Sch. Dist., 2002 U.S. Dist. LEXIS 22526 (D. Del., Nov. 21, 2002)

**DISPOSITION:**    [*1]  Plaintiff's motion to supplement administrative record granted in part and denied in part.

**COUNSEL:** Collins J. Seitz, Jr., Esquire and Gwendolyn M. Lacy, Esquire of Connolly, Bove, Lodge & Hutz, LLP, Wilmington, Delaware. Counsel for Plaintiff.

David H. Williams, Esquire and Jennifer L Brierley, Esquire of Morris, James, Hitchens & Williams, LLP, Wilmington, Delaware. Counsel for Defendant Appoquinimink School District. Louann Vari, Esquire of the Department of Justice, Dover, Delaware. Counsel for defendant Delaware Department of Education.

**JUDGES:** Sue L. Robinson, United States District Judge.

**OPINION BY:** Sue L. Robinson

**OPINION**

**MEMORANDUM OPINION**

Wilmington, Delaware

**ROBINSON, Chief Judge**

**I. INTRODUCTION**

On July 23, 2001, plaintiff W.E.B., a minor child, filed this action against defendants the Appoquinimink School District (the "School District") and the State of Delaware Department of Education (the "Department") seeking review of an adverse determination from an administrative due process hearing held by the Department

pursuant to the Individuals With Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*. This court has jurisdiction [*2]  pursuant to 20 U.S.C. § 1415(i)(3)(A) and 28 U.S.C. § 1331. Presently before the court is plaintiff's motion to supplement the administrative record. (D.I. 63)

**II. BACKGROUND**

Plaintiff W.E.B. is a minor child identified as having a learning disability under the IDEA. During the 2000-2001 school year, plaintiff attended the 7th grade at Middletown Middle School in defendant Appoquinimink School District, located in and around Middletown, Delaware. In February 2001, plaintiff's parents removed him from the Middle School citing defendant's failure to prevent daily harassment and bullying of their son. On February 5, 2001, plaintiff's parents requested an administrative due process hearing from the Department.

In May 2001, the Department held four days of hearings pursuant to 14 Del. C. § 1335 *et seq*. at which 13 witnesses testified and the panel received extensive documentary evidence and argument from the parties. Plaintiff was represented at the hearing by his parents following their dismissal of their previous attorneys. Plaintiff's parents chose not to call plaintiff. On July 20, 2001, the panel issued a decision adverse [*3]  to plaintiff.

On July 23, 2001, plaintiff filed this action seeking an appeal from the adverse ruling pursuant to 20 U.S.C. § 1415(i)(2)(A). (D.I. 1) On September 19, 2001, the court issued an order requiring plaintiff to obtain counsel and referred the case to the Federal Civil Panel. (D.I. 18, 22) After nearly a year, plaintiff's case was accepted by its present counsel who subsequently filed a motion to enforce the IDEA's stay put requirement. (D.I. 31, 34) On November 21, 2002, the court issued a memorandum opinion granting plaintiff's motion pending the outcome of the litigation in this court. (D.I. 47) The District has

subsequently arranged for homebound instruction, which plaintiff has been receiving at public expense since December 2002.

## III. DISCUSSION

Plaintiff now seeks to supplement the administrative record pursuant to 20 U.S.C. § 1415(i)(2)(B), which states that a court reviewing an administrative determination "shall hear additional evidence at the request of a party." In his request, plaintiff seeks to introduce additional testimony from six witnesses who testified previously at the hearing, and receive additional [*4] testimony from an expert, who also testified in the initial proceeding. In support of his argument, plaintiff argues that he was represented by his parents at the hearing and that additional relevant evidence may be ascertained by counsel from the previous witnesses. Additionally, plaintiff and his father would like to testify now to supplement the record. Finally, plaintiff would like to recall his expert from the hearing to update the court on his progress since the hearing.

Defendants object to the new testimony as cumulative and irrelevant, and argue that plaintiff and his father had the opportunity to testify at the hearing and chose not to. To allow the additional testimony at this stage would serve no constructive purpose to the court and would essentially be an improper *de novo* proceeding.

On appeal from an administrative panel, the court applies a modified form of *de novo* review. *Murray v. Montrose County Sch. Dist.,* 51 F.3d 921 (10th Cir. 1995); *see Oberti v. Board of Educ.,* 995 F.2d 1204 (3d Cir. 1993). Pointing out the fact that federal courts have no particular expertise in educational policy, the Supreme Court has instructed [*5] courts to give "due weight" to the administrative proceedings. *Hendrick Hudson Bd. of Educ. v. Rowley,* 458 U.S. 176, 206-07, 73 L. Ed. 2d 690, 102 S. Ct. 3034 (1982). The purpose of the "due weight" obligation is to prevent the court from imposing its views regarding educational methods on the states. *Oberti,* 995 F.2d at 1214. When engaging in judicial review under the IDEA, the court has discretion to determine what constitutes "additional evidence" under the statute. *Susan N. v. Wilson Sch. Dist.,* 70 F.3d 751, 760 (3d Cir. 1995). Courts have construed the word "additional" in the ordinary sense meaning supplemental. *Perrin v. United States,* 444 U.S. 37, 42, 62 L. Ed. 2d 199, 100 S. Ct. 311, (1980); *Burlington v. Department of Educ.,* 736 F.2d 773, 790 (1st Cir. 1984).

Thus construed, this clause does not authorize witnesses at trial to repeat or embellish their prior administrative hearing testimony; this would be entirely inconsistent with the usual meaning of 'additional.'

The reasons for supplementation will vary; they might include gaps in the administrative transcript owing to mechanical [*6] failure, unavailability of a witness, an improper exclusion of evidence by the administrative agency, and evidence concerning relevant events occurring subsequent to the administrative hearing. The starting point for determining what additional evidence should be received, however, is the record of the administrative proceeding.

*Burlington,* 736 F.2d at 790. A lax interpretation of "additional evidence" would "reduce the proceedings before the state agency to a mere dress rehearsal by allowing appellants to transform the Act's judicial review mechanism into an unrestricted trial *de novo.*" *Springer v. Fairfax County Schoolboard,* 134 F.3d 659, 667 (4th Cir. 1998)(*citing Roland M. v. Concord Sch. Comm.,* 910 F.2d 983, 997 (1st Cir. 1990).

The court concludes that additional evidence from the six witnesses that testified during the hearing would be largely cumulative and, therefore, plaintiff's motion is denied with respect to these witnesses. While the court is cognizant that plaintiff essentially acted *pro se* during the administrative hearing, this was a choice made by the party. Plaintiff voluntarily dismissed his counsel [*7] prior to hearing. Furthermore, there is no evidence that plaintiff did not have an opportunity to fully present his case to the panel. The Department served over 30 subpoenas at plaintiff's request and, ultimately, gave plaintiff four days of hearings at which he examined thirteen witnesses and submitted voluminous documentary evidence. In fact, the record illustrates that the Department has more than accommodated plaintiff's requests and provided a procedurally sound process.

With respect to new testimony from plaintiff and his father, the court shall grant plaintiff's motion. Neither testified during the initial proceeding and the court will give some latitude to the *pro se* plaintiff on this issue. Now that plaintiff has counsel, relevant evidence may be ascertained from the testimony of these witnesses.

With respect to additional testimony from plaintiff's expert, the court concludes that any new evidence related to plaintiff's progress since the hearing would be irrelevant to the ultimate issue and, therefore, plaintiff's motion with respect to this witness is denied.

## IV. CONCLUSION

DB02:6461152.1                                                    065031.1008

For the reasons stated, plaintiff's motion to supplement the administrative record [*8] is granted in part and denied in part. An appropriate order shall issue.

## ORDER

At Wilmington, this 8th day of July, 2003, consistent with the memorandum opinion issued this same day;

IT IS ORDERED that plaintiff's motion to supplement the administrative record is granted in part and denied in part.

Sue L. Robinson

United States District Judge