IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

C. H.,                                         :
                                               :
                    Plaintiff,                 :
                                               :
           v.                                  : C. A. No. 07-cv-00193-MPT
                                               :
                                               :
THE CAPE HENLOPEN SCHOOL                       :
DISTRICT, et al.,                              :
                                               :
                    Defendants.                :

PLAINTIFF'S ANSWERING BRIEF TO DEFENDANTS'
JOINT MOTION FOR SUMMARY JUDGMENT

Bruce L. Hudson, Esq.,
Delaware Bar No. 1003
800 N. King Street, Suite 302
Wilmington, DE 19801
(302) 656-9850

Wayne D. Steedman,
Federal Bar No. 09474
Callegary & Steedman, P.A.
201 N. Charles Street, Suite 1402
Baltimore, Maryland 21201
410-576-7606

# TABLE OF CONTENTS

NATURE AND STAGE OF THE PROCEEDINGS...........................................................1

SUMMARY OF THE ARGUMENT.............................................................................1

STATEMENT OF FACTS.........................................................................................2

ARGUMENT.........................................................................................................4

I.    THE DISTRICT VIOLATED THE IDEA..............................................................4

      A.    The District Was Obligated to Develop An IEP For C.H. By The
            First Day Of The 2006-2007 School Year...................................................4

      B.    The District Failed To Properly Notice the September 11, 2006 IEP Team
            Meeting...................................................................................................6

II.   THE PROCEDURAL VIOLATIONS COMMITTED BY THE
      DISTRICT RISE TO THE LEVEL OF DENIAL OF FAPE..................................9

      A.    Defendants' Failure to Provide an IEP At the Beginning of the School
            Year Denied C.H. a FAPE and Resulted in a Deprivation of
            Educational Benefit................................................................................10

      B.    Defendants' Failure to Schedule and Convene A Meeting To Develop an
            IEP Prior To the Beginning Of the School Year Significantly Impeded the
            Parent's Right To Participate in the Decision-Making Process................11

      C.    The District's Procedural Violations Justified The Parent's Decision to
            Enroll C.H. In A Private Placement.........................................................13

III.  THE "EQUITABLE CONSIDERATIONS" ALLEGED BY THE
      DISTRICT DO NOT OUTWEIGH HARDSHIPS TO THE PLAINTIFF............14

      A.    Plaintiff's Conduct Was Not Unreasonable.............................................14

            1.    C.H.'s Mother's Made Timely Requests That The IEP
                  Development Process Begin Which the District Ignored For Six
                  Months.........................................................................................15

            2.    The District Delayed Holding An IEP Meeting For Almost Seven
                  Weeks After Receiving Parent's "Permission To Evaluate"
                  Form.............................................................................................16

            3.    The District's Conduct, Rather Than The Parent's, Was
                  Unreasonable................................................................................16

      B.    Defendants Argument As To Excessive Costs of the Gow School Are
            Without Factual Basis and Are Waived For Failure To Introduce In the
            Administrative Proceeding......................................................................17

IV.   DEFENDANTS WAIVED SOVEREIGN IMMUNITY AS TO THE CLAIMS
      ASSERTED BY THE PLAINTIFF.....................................................................19

CONCLUSION.............................................................................................................................20

## TABLE OF AUTHORITIES

### Cases

Bd. of Educ. Hendrick Hudson Cent. Sch. Dist. v. Rowley,
458 U.S. 176 (1982)......................................................................................8, 10

Burlington Sch. Comm. v. Dept. of Edu.,
471 U. S. 359, 368 (1984)...................................................................................10

Honig v. Doe,
484 U.S. 305, 311 (1988)....................................................................................10

Coale v. State Dep't of Educ.,
162 F. Supp.2d 316 (D.Del. 2001).......................................................................18

Gerstmyer v. Howard Co. Pub. Sch.,
850 F.Supp. 361 (D.Md. 1994)................................................................13, 14, 17

### Statutes

Individuals with Disabilities Education Act,
20 U.S.C. § 1400 *et seq*....................................................................................1

20 U.S.C. § 1401....................................................................................................10

20 U.S.C. § 1412......................................................................................................5

20 U.S.C. § 1414.................................................................................................4, 19

34 C.F.R. § 300.322.................................................................................................9

34 C.F.R. § 300.323.................................................................................................5

34 C.F.R. § 300.513............................................................................................9, 13

14 Del. C. § 202......................................................................................................5

14 Del. Admin. C. § 922.3.0..................................................................................10

### Other Authorities

Cape Henlopen Sch. Dist.,
24 IDELR 1087 (1996).........................................................................................17

In Re: Student with a Disability,
27 IDELR 1170 (1998).....................................................................................16, 17

NATURE AND STAGE OF THE PROCEEDINGS

On September 7, 2006, the Plaintiff requested an administrative due process hearing alleging that the Cape Henlopen School District (hereinafter, "the District") and the Delaware Department of Education (hereinafter, "the Department") had violated the Individuals with Disabilities Education Act (hereinafter "IDEA"), 20 U.S.C. § 1400 *et seq.* On January 6, 2007, the administrative due process hearing panel (hereinafter, "the Panel") issued its Hearing Order and Decision rejecting four of the Plaintiff's five claims. *In the Matter of CH*, DE DP 07-06. On April 5, 2007, the Plaintiff filed a Complaint for Declaratory and Injunctive Relief appealing that decision in this Court. Defendants filed an Answer to the Complaint on June 14, 2007. Discovery closed on October 30, 2007. Defendants filed a Joint Motion for Summary Judgment on December 5, 2007, and Plaintiff filed a Motion for Summary Judgment on the same date. Plaintiff filed the Opening Brief in Support of His Motion for Summary Judgment on December 21, 2007, and on December 28, 2007, Defendants filed their Opening Brief in Support of Their Joint Motion for Summary Judgment. This is the Plaintiff's Answer to Defendants' Joint Motion.

SUMMARY OF THE ARGUMENT

The Defendants are not entitled to judgment as a matter of law, for the reasons set forth below.

(1)    Defendant the District committed violations of the IDEA because it was obligated, and failed, to develop an IEP for C.H. by the first day of the 2006-2007 school year; and because it failed to issue proper notice to C.H.'s parents for an IEP meeting convened on September 11, 2006.

(2)    The Defendants' violations of the procedural safeguards guaranteed by the IDEA rose to the level of denial of FAPE because the violations impeded C.H.'s right to receive FAPE, deprive him of educational benefit, and significantly impeded his parents' opportunity to participate in the IEP development process.

(3)    The "equitable considerations" which the Defendants allege mitigate the District's procedural violations are outweighed by the hardships to the parent and C.H. The Defendants' allegation that the parent's conduct was "unreasonable" is without merit in the face of the District's repeated and lengthy delays in the IEP development process, and is based in part on factual misstatements.  Further, the Defendants' allegation that the Gow School tuition and related costs is excessive is a bald allegation, unclothed by any citations to factual evidence showing the actual "excessiveness" of such costs, and the argument was waived by the Defendants when they failed to raise it before the Panel in their opening arguments or in any evidence showing "excessiveness."

Therefore, the Defendants are not entitled to judgment as a matter of law, and the Court should deny their Joint Motion for Summary Judgment and grant the Plaintiff's Motion for Summary Judgment.

## STATEMENT OF FACTS

Plaintiff adopts by reference the Statement of Facts in the Brief in Support of Plaintiff's Motion for Summary Judgment, filed on December 21, 2007.  Additionally, Plaintiff rebuts below factual errors contained in the Defendants' Statement of Facts.

Defendants allege that the District's Supervisor of Special Education Programs initiated the process of developing an IEP for C.H. for the 2006-2007 school year by seeking his parents' permission to conduct an evaluation of the student.  See D.I. 34 at 8.

Defendants allege that parent returned an incomplete permission form- a box was not checked.  See id.  Defendants state that the Supervisor of Special Education Programs "immediately wrote to Hayes regarding this oversight."  See id. (emphasis added) .

In fact, C.H.'s mother initiated the IEP development process in December, 2005, when she verbally requested an IEP meeting. See D.I. 21, Tab 3 at 47: 7-19.   The Supervisior did not send a "Permission To Evaluate" form until six months later. See D.I. 22, Tab 6, Exhibit 6.[1] C.H.'s mother signed and returned the form to the Supervisor on June 9, 2006.  See D.I. 22, Tab 6, Exhibit 6 (letter dated June 9. 2006, accompanying signed form).[2]  The Supervisor of Special Education did not respond to C.H.'s mother until July 5, 2006 – almost a month later.  See D.I. 22, Tab 6, Exhibit 7.  A month-long delay in response may be "immediate" in geological terms, but it does not fit the definition of "immediacy" in an educational setting.  The parent actually responded "immediately" to the Supervisor by mailing a letter and a "checked" Permission to Evaluate form on July 6, 2006.  See D.I. 22, Tab 6, Exhibit 8.

Additionally, Defendants incorrectly state in their brief that much of the delay in completely developing an IEP for C.H. is chargeable to his mother's "unreasonable conduct."  See, e.g., D.I. 34 at 24-28.  The Defendants admit that one of the purposes of the IEP Team Meeting held on August 22, 2006, was to develop an IEP for C.H.  See id. at 10.  However, the Defendants also admit that the meeting was adjourned only because "the regular education teacher in attendance had to leave."  See id.  That is, the meeting was adjourned not by any action or omission of the parent, but solely due to the District's

---

[1] For the convenience of the Court, the citation here refers to the unnumbered first page of D.I. 22, Tab 6, Exhibit 6.
[2] For the convenience of the Court, the citation here refers to the unnumbered page five of D.I. 22, Tab 6, Exhibit 6.

failure to secure required personnel to fulfill the meeting's stated purpose. (A regular education teacher is a required member of the IEP team. 20 U.S.C. § 1414(d)(1)(B).)

The Defendants further allege that the District "wanted to reconvene immediately" the IEP team, and allege that the team "agreed" to reconvene on September 11, 2006 – "the first date Hayes was available to do so." See D.I. 34 at 10. The Defendants point only to an allegation by one of its own employee to prove the unavailability of C.H.'s mother before September 11, 2006. However, that testimony is not consistent with testimony by other District witnesses. See D.I. 21, Tab 1 at 185: 5-9 (noting only parent's unavailability "the following day and the following week" after August 22). Further, the testimony is not consistent with uncontested facts on the record. See D.I. 21, Tab 5[3] (parent's Due Process Complaint, dated and stamped as received on September 7, 2006). Finally, the parent's own testimony (on cross examination by counsel for the District) contradicts the Defendants' assertion that she was entirely "unavailable" between August 22 and September 11. See D.I. 21, Tab 4 at 90:3- 92: 13. The Panel made no credibility determinations resolving the inconsistent testimony of the District's witnesses.

Finally, as Plaintiff noted in his Opening Brief, the Defendants conceded at the hearing that the Gow School is an appropriate placement for C.H. See D.I. 21, Tab 1 at 220: 8-12.

<u>ARGUMENT</u>

## I.    THE DISTRICT COMMITTED VIOLATIONS OF THE IDEA

### A.    The District Was Obligated To Develop An IEP For C.H. By The First Day Of The 2006-2007 School Year

---

[3] For the convenience of the Court, the citation here refers to the unnumbered first and second pages of D.I. 21, Tab 5.

The Defendants' Brief asserts that "the District had no legal obligation to have an IEP finalized and in place for C.H. as of the first day of school." <u>See</u> D.I. 34 at 14. Defendants assert that because C.H. was parentally placed in a private school prior to the beginning of the 2006-2007 school year, and the District was therefore relieved of any obligation to develop an IEP for C.H. <u>See id</u>. at 13. As Plaintiff discussed in his Opening Brief, 2007, Defendant's argument is factually and legally incorrect. <u>See</u> D. I. 32 at 12-18.

Federal regulations require that "[a]t the beginning of each school year, each public agency <u>must</u> have in effect, for each child with a disability within its jurisdiction, an IEP." <u>See</u> 34 C.F.R. § 300.323(a). (Emphasis added). Therefore, as C.H. was within the jurisdiction of the District, the District was legally obligated to develop an IEP for C.H. by the <u>first day of school</u>. The District attempts to dodge this obligation by alleging that C.H.'s parents did not "enroll" him in the District for the 2006-2007 school year. This allegation is also legally and factually incorrect. C.H.'s parents resided continuously in the District during the entirety of this matter, meaning that, contrary to the Hearing Panel's holding, C.H. was a resident of the District during the 2005-2006 school year. Delaware law imposes an obligation on public school districts to provide an education for all students who are "residents of this State." <u>See</u> 14 Del. C. § 202(a). By the admission of the District's own witnesses, C.H. had attended school in the District previously, and was enrolled in the District at that time. <u>See</u> Exhibit 6 (hereinafter, "Ex. 6") at 14 (documenting the development of a 2003-2004 IEP for C.H. by the District).

The IDEA requires public agencies to identify, locate and evaluate all children with disabilities within their jurisdiction and develop an IEP for each eligible child. 20

U.S.C. § 1412(a)(3) and (4).  IDEA regulations identify a public agency as the state and local education agencies "that are responsible for providing education to children with disabilities."  See 34 CFR § 300.33.  The District has admitted repeatedly, at the Due Process Hearing, in its Closing Argument before the Panel, and in the Defendants' Brief, that it began to develop an IEP at the conclusion of the 2005-2006 school year.  See D. I. 34 at 8.  The Defendants assert that such action was taken only "out of an abundance of caution."  See id.  The District's action was in fact an admission of responsibility for developing an IEP for C.H.  Thus, by initiating the IEP development process in May 2006, the District necessarily accepted responsibility, and all concomitant legal obligations, for providing education to C.H.  Defendants' arguments pleading that the settlement agreement resolving C.H.'s placement for the 2005-2006 school year somehow dissolved the District's responsibility for ongoing obligations imposed by federal and state laws is without merit.  Defendants make no citations to the record or to case law to demonstrate that the agreement absolved them of any legal obligations for the 2006-2007 school year.

**B.    The District Failed To Properly Notice the September 11, 2006 IEP Team Meeting**

Defendants assert that the District provided procedurally sufficient notice for both the August 22, 2006, and September 11, 2006, IEP Team Meetings.  See D.I. 34 at 17-19.  Plaintiff addressed this argument, at length, in his Opening Brief.  See D.I. 32 at 21-24.  However, the Plaintiff will briefly reiterate the legal mistakes repeated in Defendants' Opening Brief, and correct factual errors.

Plaintiff and Defendants agree that on August 18, 2006, the District provided C.H.'s parents with a "Notice of Meeting" for a meeting that convened on August 22,

2006.  See D.I. 22, Tab 6, Exhibit 10.  Because that notice was delivered less than 10 days prior to the meeting, C.H.'s mother signed a "voluntary waiver" to her right to receive written notice 10 days prior to the meeting.  See D.I. 22, Tab 7, Exhibit B.[4]  By its terms, the Waiver only addressed the August 22, 2006 IEP meeting.  See id.  The Defendants admit that a separate written notice was not provided for the September 11, 2006 IEP meeting. Defendants assert that District witnesses gave unanimous testimony that, at the conclusion of the August 22 meeting, a subsequent meeting was actually scheduled for September 11, 2006.  The testimony of District witnesses was contradicted by the testimony of C.H.'s mother, who testified that she was not available on that date, due to family plans.  See D.I. 21, Tab 3 at 90: 10-14.  Specifically, C.H.'s mother testified that she remembered she would be unavailable because her younger son's birthday fell on that date, and she planned to deliver cupcakes to his classroom.  See id. at 90: 13.  The Panel made no determinations that either the District's witnesses or C.H.'s witnesses were more credible on this point.

The question of whether September 11, 2006 had been agreed upon is ultimately moot.  As noted in Plaintiff's Opening Brief, there were 20 days between the conclusion of the August 22 meeting and September 11, more than sufficient time for the District to provide the legally required 10 days written notice to parents in order to prevent any misunderstanding as to the date.  See D.I. 32 at 21.  The District's own Supervisor of Special Education admitted that when the District convenes "a continuation of an eligibility/IEP conference . . . [u]sually we send a reminder" to parents.  See D.I. 21, Ex. 3 at 13: 21-14: 3.  That reminder is the same official notice form sent to parents for any

---

[4] For the convenience of the Court, the citation here refers to the form titled "Waiver", the unnumbered final page of D. I. 22, Tab 7, Exhibit B.

other IEP meeting, she testified.  See id. at 14: 6-8.  Such reminders are sent even if the

IEP team "sit[s] around and at the end . . . decide[ they] were going to continue it."  See

id. at 13: 22-14: 1.

The Supreme Court has held that school districts must observe such strict

adherence to procedural guidelines due to the weight placed in the IDEA on parents'

participation in their children's education.  See Bd. of Educ. Hendrick Hudson Cent. Sch.

Dist. v. Rowley, 458 U.S. 176, 205 (1982) ("[W]e think that the importance Congress

attached to these procedural safeguards cannot be gainsaid").  The weight of this

authority also overcomes the Defendants' argument, provided without citation to any

caselaw or facts in the record, that the September 11th meeting required no notice because

it was a "continuation" of the August 22nd meeting.  See, e.g., D.I. 34 at 19.

Finally, Defendants' Opening Brief makes a factual misstatement that "Hayes

refused to attend the September 11th meeting because she had filed for due process, not

because she had received inadequate or untimely notice of it."  See D.I. 34 at 19.

Defendants appear to argue, by implication, that C.H.'s parents actually did receive

sufficient notice of the September 11th meeting, but chose to disregard it.  In fact, on

Friday, September 8, 2006, the District sent a letter to the Gow School, requesting faculty

participation in a meeting on Monday, September 11, 2006.  See D.I. 22, Tab 6, Exhibit

11.  The District sent a copy of that letter to C.H.'s parents.  See id.  At the administrative

hearing, C.H.'s mother testified that she received that letter on Saturday, September 9,

2006.  See D.I. 21, Tab 3 at 93: 11-12.

Delaware law requires the school district to notify parents at least ten business

days in advance of an IEP meeting to ensure they have an opportunity to attend.  See 14

8

Del. Adm. C. § 925.22.1.1.  The notice must include the time, location and purpose of the meeting, and must include the names of anticipated participants in the meeting.  See 14 Del. Adm. C. § 925.22.2.1.  Federal law requires that a public agency convening an IEP meeting "take steps to ensure that one or both of the parents of a child . . . are afforded the opportunity to participate, including . . . [n]otifying parents of the meeting early enough to ensure that they will have an opportunity to attend."  See 34 C.F.R. § 300.322(a)(1) (emphasis added).  The District at no time sent a Notice of Meeting to C.H.'s parents that included the date, time, location, purpose of, and names of participants in an upcoming meeting.  Instead, the District sent a letter to a third party, and incidentally forwarded a copy to C.H.'s parents.  The letter included no statement of the purpose of an upcoming meeting and the letter was sent less than one business day prior to the meeting and arrived less than 48 hours prior to the meeting which convened at 9 a.m. Monday morning.  The letter does not, in any way, begin to fulfill the state and federal notice requirements that the District must meet.

## II.    THE PROCEDURAL VIOLATIONS COMMITTED BY THE DISTRICT RISE TO THE LEVEL OF DENIAL OF FAPE

The Defendants contend that none of the procedural violations they committed actually rise to the level of denying FAPE to C.H.  See D.I. 34 at 19-23.  Plaintiff addressed this issue at length in his Opening Brief.  See D.I. 32 at 24-27.  However, to briefly reiterate, procedural violations rise to the level of denying FAPE to a child if they (i) impede the child's right to a FAPE; (ii) significantly impede the parents' opportunity to participate in the decision-making process regarding provision of FAPE; or (iii) caused the deprivation of educational benefit.  See 34 C.F.R. § 300.513(a)(2).  As Plaintiff noted in his Opening Brief, the District's procedural violations rose to the level of a denial of

FAPE because, by failing to put an IEP in place for C.H. by the first day of school, the

District impeded his right to receive a FAPE and deprived him of educational benefit.

Additionally, by failing to provide sufficient notice to C.H.'s parents prior to an IEP

Team Meeting apparently intended to develop an IEP for C.H., the District significantly

impeded his parents' ability to participate in making decisions about how to provide a

FAPE to C.H.

> **A.      Defendants' Failure to Provide an IEP At the Beginning of the School
> Year Denied C.H. a FAPE and Resulted in a Deprivation of
> Educational Benefit.**

The primary vehicle for providing a FAPE is the IEP.  Honig v. Doe, 484 U.S.

305, 311 (1988); see also Rowley, 458 U.S. at 177 ("The 'free appropriate public

education' required by the Act is tailored to the unique needs of the [disabled] child by

means of an 'individualized education program.'"); Burlington Sch. Comm. v. Dept. of

Edu., 471 U. S. 359, 368 (1984) ("The *modus operandi* of the Act is the …

'individualized educational program.'"). Defendants argue that even though the District

had failed to develop an IEP for C.H. by the start of the school year, he would have

suffered no impediment to his right to receive a FAPE if he had only attended the

District's school on the first day of the 2006-2007 school year.  See D.I. 34 at 21.  But the

IDEA defines FAPE as special education and related services *provided in conformity with

an IEP*.  20 U.S.C. § 1401(9) (emphasis added); see also 14 Del. Admin. C. § 922.3.0.

FAPE does not exist in a vacuum, and cannot exist without an IEP.  Id.  The District's

evaluation of C.H. during the summer, 2006, revealed that he was reading three to four

years below his grade level and his math skills were five to six years below grade level.

See D.I. 22, Tab 6, Exhibit 19 at 4.  Without an IEP, C.H. would have been placed in

regular classes without any specialized instruction or support. Under such circumstances C.H. would not have received educational benefit and would have been frustrated, overwhelmed, and very likely discouraged. Thus, the District's contention that C.H., having been found eligible for special education, could have received FAPE at the beginning of the school year without an IEP in place ignores reality and is legally incorrect as it ignores both statute and caselaw.

      **B.**    **Defendants' Failure to Schedule and Convene A Meeting To Develop an IEP Prior To the Beginning Of the School Year Significantly Impeded the Parent's Right To Participate in the Decision-Making Process**

Defendants argue that they should not be held responsible for their procedural violations, because they scheduled an IEP meeting for September 11, 2006, and C.H.'s parent merely failed to attend. Defendants also allege that C.H.'s mother waived her right to any notice of the September 11 IEP meeting. Defendants allege that because C.H.'s mother signed a waiver of ten-day notice at the August 22 IEP meeting, the September 11 meeting was merely a "continuation" of the earlier meeting for which no further notice was required. See, e.g., D.I. 34 at 18-19. The Defendants' argument is not supported by the facts or the law.

Perhaps the most telling evidence is the contents of the August 22 IEP meeting minutes. Five District employees attended the August 22 IEP meeting with C.H.'s mother. The District developed and maintained minutes of the meeting. See D.I. 22, Tab 7, Exhibit B. The minutes consist of one handwritten page documenting the purpose of the meeting and three typed pages of notes detailing the actual proceedings. The District introduced the minutes before the Panel in support of its arguments, and relies on them before this Court as well. The minutes chronicle in detail the discussion and decisions

made at the meeting.  Yet, conspicuously absent from these four pages of a document developed by the District, is any reference to another meeting let alone an agreement to continue the meeting on September 11, 2006.  One would expect that something so important and central to the Defendant's argument would at least be mentioned in such a document.

Further, the District's Waiver itself undermines the Defendant's argument.  The Waiver says that the signatory has "voluntarily waived my right to a written notice provided ten (10) working days prior to a meeting involving the identification, evaluation, placement or the provision of a free appropriate public education (FAPE) of my child."  See D.I. 22, Tab 7, Exhibit B.[5] (Emphasis added.)  It is significant that the Waiver references only "a meeting," – one meeting, to which the parent agrees to waive her right to a written ten day notice. The District is responsible for the contents of the Waiver, and any uncertainty induced by the language of the Waiver is properly chargeable to the party that was responsible for that language – the District.

The Waiver does not indicate in any way to parents that they waived notice of any and all future IEP meetings or "continuations" of IEP meetings.  Such an interpretation of the Waiver form would eviscerate the state and federal notice requirements.  Further, a Waiver purporting to extend to any and all "continuations" of an IEP meeting would allow the District, after holding one IEP meeting, simply to claim that every IEP meeting thereafter was a "continuation" and not subject to further notice requirements.

Finally, Defendants state that "Hayes *admits* that these [scheduling] discussions took place and that the meeting was to take place on September 11th."  See D.I. 34 at 23

---

[5] For the convenience of the Court, the citation here refers to the unnumbered final page of D.I. 22, Tab 7, Exhibit B.

(citing D.I. 21, Tab 3 at 90-91)(emphasis in original).  A review of that transcript portion reveals that, although C.H.'s mother acknowledged there was discussion of a subsequent IEP meeting, she never agreed to a meeting on that date.  See D.I. 21, Tab 3 at 90: 5-6. September 11 was her younger son's birthday and she wanted to take cupcakes to his school.  See id. at 90: 17-20.  At no point did the parent "*admit*" that a meeting had been scheduled specifically for that date.

Thus, the evidence shows that the District failed to provide the required notice to C.H.'s mother for the September 11, 2006 IEP meeting.  As a result, C.H.'s mother did not attend.  When an IEP meeting is held without a parent in attendance due to the school's failure to adhere to the IDEA's procedural requirements, the parent is prevented from participating in the decision making process regarding the provision of a FAPE which constitutes a denial of FAPE.  See 34 C.F.R. § 300.513(a)(2)(ii).

### C.     The District's Procedural Violations Justified The Parent's Decision to Enroll C.H. In A Private Placement

Even if Defendants had secured parent's agreement to such a meeting, The school year would have already started without an IEP, and hence a FAPE, in place for C.H. Further, C.H.'s mother had no guarantee that the District would actually develop an IEP at that meeting, or that such an IEP would be appropriate.  Afterall, the Notice of the August 22, 2006 IEP meeting, stated that one purpose of the meeting was to develop an IEP for C.H., yet the District terminated the meeting before an IEP could be developed. Against such a background, the parent had no choice but to enroll C.H. in the only guaranteed appropriate setting.

In Gerstmyer v. Howard Co. Pub. Sch., 850 F.Supp. 361 (D.Md. 1994), a U.S. District Court in Maryland considered similar parent actions when confronted by months-

long procedural violations and school system delays.  When confronted by systemic

failures to timely provide an appropriate IEP, the court noted, the Gerstmyers "did what

any reasonably prudent parent who could afford to do so would do: they withdrew [the

student] from [his public placement] and placed him in a private school where they had

reason to believe that he would receive more individualized attention."  See id. at 365.

Not every procedural violation constitutes a reason for unilateral placement, the court

noted.  See id.  But the school's failure to develop an IEP prior to the start of the school

year when notified four months before the beginning of the school year was sufficient

demonstration that the student had "suffered an actual loss of educational opportunity."

See id. at 366.  The District's delays in the instant case are equally egregious.


III.    THE "EQUITABLE CONSIDERATIONS" ALLEGED BY THE DISTRICT
        DO NOT OUTWEIGH HARDSHIPS TO THE PARENT

        A.    C.H.'s Mother Acted in Good Faith And Her Conduct Was Not
              Unreasonable

        Defendants rely on a mistaken characterization of the facts in evidence at

the hearing to assert that the mother admitted she had no intention of returning

C.H. to the District.  Defendants assert that "Hayes could not identify a *single*

document in the record indicating that she intended to return C.H. to the District."

See D.I. 34 at 25 (emphasis in original).  To prove this point, Defendants cite

page 105 in the transcript of parent's testimony before the Panel.  (Attached

herewith as Exhibit A).  Nothing on that page of the transcript clarifies what

"documentation" is referred to. However, on the preceding pages 103-104, C.H.'s

mother states the she verbally requested an IEP meeting but did not send a letter

to the District requesting a meeting. See D.I. 21, Tab 3 at 103: 20-105: 2. (See

exhibit A attached).  The Defendants' characterize this exchange as demonstrating that C.H.'s mother admitted that all documentary evidence showed that she never intended to return C.H. to a District school.  That is quite simply not the statement Mrs. Hayes made, nor is it the thrust of District's questioning.

To support their assertion of "unreasonable conduct," the Defendants focus on the actions of C.H.'s mother in the days after she had filed a due process hearing request. They ignore, however, the long history of dilatory tactics on the part of the District preceding the parent's due process request.

### 1.  C.H.'s Mother's Made Timely Requests That The IEP Development Process Begin Which the District Ignored For Six Month

Over the course of the 2005-2006 school year, the District's Supervisor of Special Programs and C.H.'s mother met repeatedly.  See D.I. 21, Tab 2 at 139: 19-140: 3.  The Supervisor of Special Programs testified that, over the course of these meetings, they discussed possible 2006-2007 placements for C.H. without determining a specific placement.  See id. at 138: 3-14.  C.H.'s mother testified, without contradiction, that in December, 2005, she requested evaluations of C.H. to be used in the IEP development process.  See D.I. 21, Tab 3 at 47: 7-19.  Nevertheless, the District did not initiate the IEP development process until May 30, 2006, six months after parent's request and three months prior to the beginning of the 2006-2007 school year.  See "Statement of Facts," supra.  Part of the reason for the delays was the Supervisor took a new job with the District.  See D.I. 21, Tab 2 at 89: 18 (noting that Elizabeth Joynes was employed as Supervisor until "June 2006").  During the transition, the Supervisor admitted, "there was

a lot going on," and some preparations for the IEP meeting "slipped her mind." Ex. 2 at 114: 16-20.

## 2. The District Delayed Holding An IEP Meeting For Almost Seven Weeks After Receiving Parent's "Permission To Evaluate" Form

No evaluation took place for a month after the parent returned the permission form with the requested checkmark.  More than a month after the District received the "completed" permission form, a District psychologist evaluated C.H. and completed a report of his evaluation on August 15, 2006.  See D.I. 22, Tab 6, Exhibit 19.  On August 18, 2006 – a month and a half after Parent returned the check-marked permission form - the District sent an IEP meeting notice to parent scheduling an IEP team meeting for August 22, 2006.  See D.I. 21, Tab 6, Exhibit 10.[6]  During the IEP meeting, the school psychologist reviewed the contents of his report, but the team took no steps to develop an IEP for C.H.'s tenth grade year during the meeting.  The meeting minutes do not reflect a date for a subsequent meeting to develop an IEP for C.H.  See id.  On September 7, 2006 – 16 days after the previous IEP meeting, and 100 days after the District's letter initiating the IEP development process – the parent filed a Due Process Hearing Request.

## 3. The District's Conduct, Rather Than The Parent's, Was Unreasonable

The District focuses intently on parent's conduct after her Hearing request, but ignores more than three months of delays and adherence to rote procedure that preceded her request.  It paints as "unreasonable" the conduct of a parent who had participated fully in each step of the IEP development process, and had shown her willingness to waive procedural requirements if it would have led to the expeditious development of an

---

[6] For the convenience of the Court, the citation here refers to the unnumbered fourth page of Ex. 6 at 10.

IEP.  The District's actions took place against the background of state administrative

decisions holding that federal "[s]tatute says that responsibility for the IEP meeting is on

the school," and that it is inappropriate to shift responsibility for timely scheduling IEP

development meetings to parents.  See In Re: Student with a Disability, 27 IDELR 1170

(1998).  Further, the District had notice that previous administrative decisions had held

that, when faced with the District's failure to timely develop an IEP, "the excuse that

relevant District officials were on vacation and changing assignments is inadequate."  See

Cape Henlopen Sch. Dist., 24 IDELR 1087, 1094 (1996).

In the instant controversy, 12 years after the above-referenced decision was

handed down, the Defendants attempt once again to paint three months of delays as

excusable due to "vacation and changing assignments" by District officials.  Faced with

such delays, the Defendants paint as unreasonable the conduct of a parent who attempted

to facilitate the IEP process from December 2005 through August 2006, only to become

exasperated after nine months of failed efforts to yield an IEP for her child.  Thus, C.H.'s

mother "did what any reasonably prudent parent who could afford to do so would do":

she placed C.H. in a private school where his special education needs would be

adequately addressed.  See Gerstmyer, 850 F.Supp. at 365

### B.   Defendants' Argument As To Excessive Costs of the Gow School Are Without Factual Basis and Are Waived For Failure To Introduce In the Administrative Proceeding

The District alleges that, even if the facts support an award of tuition

reimbursement to C.H., the relief should be denied because the "costs of the Gow School

tuition and related expenses are excessive and onerous."  See D.I. 34 at 29.  The

Defendants make no demonstration of what that Gow School tuition "exceeds," let alone

that it is *per se* excessive.  The Defendants simply offer no evidence whatsoever to support their claim.

Further, the Defendants have waived this argument by failing to raise it during the course of the administrative proceeding.  Rules of exhaustion and issue preclusion apply to judicial review of IDEA cases.  See Coale v. State Dep't of Educ., 162 F. Supp.2d 316 (D.Del. 2001).  The rule of preservation need not be punctiliously applied, but the party must raise the issue sufficiently before the Panel to provide their opponents with notice and an opportunity to develop the evidence.  See id.  Plaintiff sought relief of "full cost of tuition and all related costs" in the Due Process Hearing Request filed September 7, 2006.  See D.I. 21, Tab 5.[7]  The District made no reference to the total costs of the Gow School tuition in its opening argument before the Panel.  See D.I. 21, Tab 1 at 6: 21-17: 19.  The Department made no reference to the costs of Gow School tuition in its opening argument.  See D.I. 21, Tab 1 at 18: 2-20: 20.  Neither defendant introduced any evidence as to Gow School tuition during the hearing.  The District raised the argument as to excessive costs for the first time in its closing argument.  See D.I. 22, Tab 8, District's Argument at 20.  However, the District there made nothing more than a bald assertion, and indeed appears to have cut and pasted the identical argument into its Opening Brief before this Court.  The Panel made no determination as to the excessiveness, or otherwise, of the Gow School tuition.  By failing to timely put the issue before the Panel in their opening arguments, and by failing to introduce any evidence that would support the argument, the Defendants have effectively waived the argument that the Gow School tuition and related costs are "excessive and onerous."

---

[7] For the convenience of the Court, the citation here refers to the unnumbered second page of Ex. 5.

IV.    **PLAINTIFF DID NOT FAIL TO EXHAUSE ADMINISTRATIVE
REMEDIES REGARDING THE DISTRICT'S DUTY TO MONITOR C.H.**

Defendants allege that Plaintiff failed to exhaust administrative remedies with

respect to the allegations in Paragraph 32 of the Complaint.  See D.I. 34 at 17.  That

Paragraph alleged that, "as funding agencies, CHSD and DDOE had a duty to monitor

[C.H.'s] placement and conduct a review of his progress before the end of the 2005-2006

school year . . . CHSD failed to do so."  See D.I. 1 at ¶ 32.  As support that the allegation

includes a legally actionable failure, the Complaint cites 20 U.S.C. § 1414(d)(4)(A)(i).

See id.  That section states that a local education agency must ensure that an IEP Team

"reviews the child's IEP periodically, but not less frequently than annually, to determine

whether the annual goals for the child are being achieved," in order to ensure that the IEP

states appropriate goals for the child.  See 20 U.S.C. § 1414(d)(4)(A)(i)-(ii).

Plaintiff alleged the District's failure to monitor C.H.'s progress in private

placement in support of the allegation that knowledge of his progress was essential if the

District was to develop an appropriate IEP for him.  C.H.'s mother stated as much in her

testimony before the Panel.  The parent testified that, prior to the meeting date, she

offered to send Gow School progress reports to the Supervisor, who said "'no, I already

have it,' and refused it."  When the Aug. 22 meeting convened, it became clear that the

team was hamstrung because "the District did not have ... the teacher comments what

C.H. was like in classroom, how does he progress within the classroom, what it takes to

get C.H. to do things."  See D.I. 21, Tab 3 at 63-65.  Parent elsewhere questioned the

Supervisor specifically with regard to the District's failure to monitor C.H.'s progress.

See D.I. 21, Tab 3 at 11:12-12: 2 (noting the Supervisor's failure to secure copies of C.H.'s progress reports).

Plaintiff has alleged, both before this Court and before the Panel, that the District had a duty to provide FAPE via an appropriate IEP for C.H. Plaintiff further alleged, before this Court and before the Panel, that the District violated procedural timelines established by law to ensure that appropriate IEPs are timely developed. Plaintiff has further alleged, before this Court and before the Panel, that the District's lack of information regarding C.H.'s academic progress and intellectual functioning was part and parcel of its failure to timely develop an appropriate IEP. It is simply erroneous to charge, at this point, that Plaintiff has failed to exhaust administrative remedies on this issue.

<u>CONCLUSION</u>

WHEREFORE, for the reasons set forth in this brief, and in Plaintiff's Brief in Support of his Motion for Summary Judgment, the Plaintiff respectfully requests that this Honorable Court deny Defendants' Joint Motion for Summary Judgment; and grant the Plaintiff's Motion for Summary Judgment, reverse the ruling of the State Hearing Panel and enter judgment in favor of the Plaintiff.

RESPECTFULLY SUBMITTED,

| | |
|---|---|
| /s/ Wayne D. Steedman | /s/ Bruce L. Hudson |
| Wayne D. Steedman, Esq. | Bruce L. Hudson, Esq |
| Federal Bar No. 9474 | Delaware Bar No. 1003 |
| Callegary & Steedman, P.A. | Law Office of Bruce L. Hudson |
| 201 N. Charles St., Suite 1402 | 800 N. King St., Suite 302 |
| Baltimore, MD 21201 | Wilmington, DE 19801 |
| (410) 576-7606 | (302) 656-9850 |
| wayne@callegarysteedman.com | delaw@brucehudsonlaw.com |
| Attorney for Plaintiffs | Attorney for Plaintiffs |

20

Hayes - Battaglia

1 I were at least on terms where we could discuss
2 things. And we, she was very amicable to evaluating
3 Corey. Our discussions were friendly. Liz and I were
4 never adversarial during that time the reason during
5 that time in our discussions. When I'm a parent and i
6 walk in and I'm talking to somebody, I normally expect
7 that it's reciprocal. And it seemed like she
8 understood when I said: I miss Corey, I want him
9 home, Corey is doing well academically, but I'm
10 missing out on Corey. I'm missing out on the soccer
11 games. I said that I would prefer, and I did state
12 that I would prefer Corey to come home. One, I could
13 not financially keep him there. And I did state that
14 from June 05 straight through the end of 06. And the
15 letter that I wrote was the last frustration from me.
16 And I didn't want to be, again, adversarial with her.
17 I wanted, and I believe in the letter that I wrote on
18 June 6th or 9th that I did want to continue working
19 towards an appropriate IEP for Corey. I made
20 suggestion how we could speed this up and get this
21 thing going so that we could discuss the entirety of
22 an IEP, including placement. I mean, I brought her

DELMARVA REPORTING
(302) 653-1036

Hayes - Battaglia

1 the information. The information was utilized in the
2 past by past evaluators. The District has always told
3 me that to evaluate and find out what a dyslexic child
4 needs, it has to be done by neurologist. State of
5 Delaware has testified at other meetings.
6         MR. WERNER:   Who told her
7 that?
8         MS. BATTAGLIA:   This is her
9 impression that it has to be a neurologist to give
10 that diagnosis?
11         MS. BARBARA HAYES:   I was
12 told by the District.
13         MR. WERNER:   By who?
14         THE WITNESS:   Liz Joynes,
15 Martha Toomey, Dr. diBastiani, a school psychologist
16 at the District.
17         MS. BATTAGLIA:   They don't
18 work for the District.
19         MS. BARBARA HAYES:   Has
20 testified in other hearings, when I tried to bring up
21 the fact that Corey was dyslexic. The first, the
22 neurologist evaluation --

DELMARVA REPORTING
(302) 653-1036

---

103

1         MR. STAFFORD:   This is so
2 far off.
3         MS. BATTAGLIA:   We're
4 getting way off base. I understand.
5         MR. WERNER:   I think there's
6 a difference between diagnosis.
7         MS. BARBARA HAYES:   The
8 diagnosis was made in 03 by Dr. Jane Healey.
9         MR. WERNER:   That's fine.
10 That's not a diagnosis.
11         MS. BARBARA HAYES:   By the
12 District.
13         MS. BATTAGLIA:   We are way
14 off field, but my point was, and I think I go back to
15 my question. You had these casual conversations, and
16 you assumed that you are pushing to say, let's do this
17 IEP, when are we going to do that, was enough to clue
18 the District in that you are frustrated that there's
19 no IEP in place, and when are we sitting down to do
20 this? But you never made a direct statement to them
21 or did you write them saying: When is the IEP meeting
22 going to be scheduled for Corey?

DELMARVA REPORTING
(302) 653-1036

104

1         MS. BARBARA HAYES:   Yes, I
2 did. In December I asked when --
3         MS. BATTAGLIA:   In December?
4 THE WITNESS:   Of 05.
5         MS. BATTAGLIA:   Where is
6 that letter?
7         MS. BARBARA HAYES:   Not a
8 letter. Not a letter. You asked her when i spoke to
9 her. It wasn't casual at that point. It was a direct
10 testimony.
11         MS. BATTAGLIA:   Is there any
12 documentation other than your statement?
13         MS. BARBARA HAYES:   Just my
14 testimony.
15         MS. BATTAGLIA:   Okay. So it
16 was a conversational request?
17         MS. BARBARA HAYES:   Yes.
18         MS. BATTAGLIA:   You never
19 wrote a letter to the District? Despite all your
20 frustrations, despite all your contacts with the
21 District, you never sat down to the District and wrote
22 them a letter and said: We need to get started? The

DELMARVA REPORTING
(302) 653-1036



EXHIBIT
A

105

1 year is passing by. When are we starting Corey's IEP
2 development?
3                MS. BARBARA HAYES:    Not a
4 letter like that. But other letters were written to
5 the District that I didn't feel were appropriate here
6 in discussion of the agreement and release, because I
7 didn't think that that, I mean, I tried to follow that
8 rule.
9                MS. BATTAGLIA:    I asked a
10 question and I got an answer.
11                MS. BARBARA HAYES:    So no, I
12 did my --
13                MS. BATTAGLIA:    There is no
14 documentation in the record --
15                MS. BARBARA HAYES:    No.
16                MS. BATTAGLIA:    -- that,
17 your testimony is --
18                MS. BARBARA HAYES:    Quite
19 honestly, I had a computer failure during the year.
20 And when I asked to go and see the records for 05/06,
21 I was denied access.
22                MR. STAFFORD:    Objection.

DELMARVA REPORTING
(302) 653-1036

106

1 Objection.
2                MS. BATTAGLIA:    Objection.
3                MR. STAFFORD:    Thank you.
4                MS. BATTAGLIA:    That's not
5 the question. You know whether there is a document or
6 not.
7                MR. STAFFORD:    Any letters
8 that Mrs. Hayes wrote would be in her own possession.
9 She would be able to reference them.
10                MS. BARBARA HAYES:    There
11 were many times --
12                MR. STAFFORD:    Frankly, I
13 have to object to this testimony at this point.
14 Again, we are going back to discussions concerning,
15 she's referencing again discussions concerning
16 negotiations and settlement agreement. Rule 408.
17                MS. BATTAGLIA:    Which are
18 not relevant.
19                MR. STAFFORD:    Thank you.
20                MS. BARBARA HAYES:    Right.
21 That's why I didn't want to bring that up. As far as
22 emailing her to let her know, did I write a formal

DELMARVA REPORTING
(302) 653-1036

107

1 letter? There were emails between Liz and I that,
2 like I said, I had a computer break down. I don't
3 have the stuff that I had saved. I lost everything.
4 That's what I'm still having trouble with emails.
5                Q.        So then your answer, I mean
6 the answer to the question is: Is there any
7 documentation? Is your response that there was
8 documentation, but you lost it in the computer?
9                MS. BARBARA HAYES:    I would
10 imagine I had to write at least one email.
11                MS. BATTAGLIA:    But you
12 don't know?
13                MS. BARBARA HAYES:    I
14 couldn't swear to it, no.
15                MR. STAFFORD:    No further
16 questions.
17 BY MR. WERNER:
18                Q.        I'm curious. When did you
19 plan to enroll your son in the school district this
20 coming year, this current school year?
21                A.        It was after the August 22nd
22 meeting.

DELMARVA REPORTING
(302) 653-1036

108

1                     Hayes - Werner
1                Q.        Okay.
2                A.        Actually, it was.
3                Q.        If you are talking about
4 May, help me understand. May, you are saying: I
5 wrote a letter and the school district is on notice
6 that he's coming back. But as of 8/22, you still had
7 not done it. You had still not registered your son --
8                A.        Enrolled him?
9                Q.        -- in the school district
10 for the year?
11                A.        No, because enrollment --
12                Q.        No is the answer?
13                A.        -- would affect his
14 placement. This is in my perception as a parent.
15 Enrollment would mean that I was providing Corey to
16 the District to provide programs. Whether or not they
17 could implement the programs was still a question that
18 had to be done before I enrolled him.
19                Q.        When I first asked, you said
20 after the meeting on 8/22. After the meeting on 8/22,
21 what steps did you take to register your son in the
22 school district for this current school year,

DELMARVA REPORTING
(302) 653-1036